RAYMOND–DRAVO–LANGENFELDER, a joint venture, Plaintiff,

v.

MICRODOT, INC. and Maryland Liquidating Company, Defendants and Third-Party Plaintiffs,

v.

MARYLAND SHIPBUILDING & DRYDOCK COMPANY, Third-Party Defendant.

Civ. A. No. 74–254.

United States District Court, D. Delaware.

Dec. 30, 1976.
Memorandum Opinion on Reargument Feb. 23, 1977.

Victor F. Battaglia, of Biggs & Battaglia, Gerald C. Foulk, of Miller & Foulk, Wilmington, Del., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for plaintiff.

Richard L. Sutton, William C. Anderson, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants and third-party plaintiffs.

R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, Del., Semmes, Bowen & Semmes, Baltimore, Md., for third-party defendant.

## OPINION

STAPLETON, District Judge:

This is a breach of contract action in which jurisdiction is based on diversity. The Court is asked to determine here whether the principal action and/or the third party action is barred by the statute of limitations.

Raymond-Dravo-Langenfelder (hereinafter "RDL"), the plaintiff, is a joint venture composed of a New Jersey, a Pennsylvania, and a Maryland corporation. The complaint alleges that RDL was the prime contractor for the construction of a bridge across the Chesapeake Bay in Maryland and that RDL contracted to purchase a number of steel pier forms for the bridge from Maryland Liquidating Company (formerly known as Wiley Manufacturing Company and hereinafter referred to as "MLC"), a Delaware corporation. By a letter dated December 18, 1969, Microdot, also a Delaware corporation and the parent corporation of MLC, guaranteed the performance of MLC. MLC then entered into a sub-contract with third-party defendant Maryland Shipbuilding, a Maryland corporation at the time and now a Michigan corporation, pursuant to which Maryland Shipbuilding fabricated steel pier form ¶ 46 and delivered it to the construction site on November 17, 1970. On November 19th, the pier form was set in position and the next day employees of RDL began pouring concrete into it. Before that process was completed, on or about December 7, 1970, the pier form collapsed into the bay. This event, plaintiff alleges, was the result of faulty workmanship and constituted a breach of MLC's warranty to RDL. Plaintiff seeks to recover the damages he incurred as a result of the collapse. Microdot and MLC argue that any defect in the pier was caused by Maryland Shipbuilding and they seek recovery from the fabrication for any damages assessed against Microdot or MLC.

The procedural history of the case has bearing on some of the issues presented by the motion of the defendants for judgment on the pleadings that is now before me. Therefore, I will review briefly the course the case has taken thus far. After an abortive attempt to bring this suit in the United States District Court for the Eastern District of Virginia in mid-1973, the plaintiff filed an action in the District of Delaware against Microdot and MLC on November 22, 1974. On December 19, 1974, the defendant filed a third-party complaint against Maryland Shipbuilding. Plaintiff then filed a second action in the District of Connecticut on February 21, 1975, naming only Microdot as defendant. Except for the absence of MLC's name from the complaint in Connecticut, the complaints in the two actions are identical. Pursuant to 28 U.S.C. § 1404(a), Microdot moved for and was granted a transfer of the Connecticut case to the District of Delaware. The two actions have since been consolidated.

I have concluded that the statute of limitations applicable to MLC expired before the Delaware suit was filed and that, therefore, MLC is entitled to be dismissed. The Connecticut statute applicable to Microdot in the transferred suit has not run and, therefore, Microdot remains in the suit.

Microdot may not pursue its third-party action against Maryland Shipbuilding, however, because any possibly applicable limitations period on such an action has past. Because different considerations have led me to these conclusions with respect to each defendant and the third-party defendant, I will discuss the situation of each party separately.

## I. MLC

MLC entered into the contract with plaintiff which underlies this suit. Pursuant to the contract, MLC agreed to sell to RDL pier forms meeting certain detailed specifications which were to be used in the construction of the bridge. There appears to be no dispute that this was a contract for the sale of goods and that it is covered by the limitations provision in § 2–725 of the Uniform Commercial Code (hereinafter UCC or the Code) which has been enacted in all of the arguably relevant jurisdictions. Accordingly, there is no choice of law difficulty with respect to the claim against MLC. The only issue is when the cause of action against MLC accrued.

Section 2–725 of the UCC reads in pertinent part:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

. (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Defendant MLC argues that the four-year time bar applies and that if there was any breach, it occurred on November 17, 1970, when MLC delivered the pier forms to

RDL through its sub-contractor Maryland Shipbuilding. According to this theory, the suit filed on November 22, 1974 was not timely and must be dismissed.

██ RDL counters with two arguments. First, it contends that plaintiff accepted the pier forms for towing only and that it reserved the right to conduct later inspections and to reject the goods if they did not conform to the specifications of the contract. While this may be so, it is irrelevant to the statute of limitations question. The Code clearly states that a cause of action for breach of warranty accrues when tender of delivery is made. Whether or not the buyer at that time "accepts" the goods, as that term is used in the Code,[1] or, on the other hand, withholds acceptance until he or she has had an opportunity to fully inspect for defects, does not affect when the buyer must institute suit for breach of warranty. This is so even if the defect does not appear until after the limitations period has run.[2] Once the seller tenders the goods, the limitations period begins to run unless the contract is covered by the exception in Section 2–725(2), a question I will now turn to.

RDL more earnestly argues this second point, that the contract in this case falls within the exception to the tender of delivery rule in Section 2–725 for warranties "which explicitly exten[d] to future performance of the goods. . . ." I am not persuaded that the warranty in this case is of that nature.

RDL's contract with MLC expressly incorporated by reference a manual entitled "Special Provisions and Proposal Form for Substructures" issued by the State Roads Commission of Maryland. That manual sets standards for construction materials to be used on Maryland highways and bridges. It includes detailed standards for pier forms such as the one involved in this lawsuit specifying in pertinent part:

The permanent pier forms shall be sufficiently watertight to prevent the loss of grout, and shall be thoroughly braced to

1. See, e. g., UCC §§ 2–601, 2–606, 2–607.

2. White and Summers, *Uniform Commercial Code* § 11–8, p. 341.

**618**

withstand all stresses and pressures produced by handling and pouring concrete continuously between the limits of construction joints shown on the Plans. The upper section of these forms shall be sufficiently watertight to permit the proper placement of concrete above Elevation –8.0 (Elevation –9.0 for Piers 43 through 48) in the dry and shall be connected by a watertight joint to the steel production plates. The top of the diaphragm of the permanent pier form shall be open.[3]

Plaintiff contends that these specifications to which MLC agreed as part of its contractual undertaking constituted a warranty "explicitly extend[ing] to future performance." UCC § 2–725. The future performance to which the warranty extended, RDL argues, is the performance of the pier forms after the concrete had been poured as described in the contract specifications. Until then, RDL says, it had no way of knowing whether the pier forms were as warranted.

■ The difficulty of determining conformity with a warranty at the time of delivery is a problem common to many situations involving warranties by description. Such difficulties have not been regarded as controlling, however, in the absence of contract language explicitly warranting future performance. The drafters of the UCC decided that the seller's need to have some clearly defined limit on the period of its potential liability outweighed the buyer's interest in an extended warranty and reserved the benefits of an extended warranty to those who explicitly bargain for them.

The courts have interpreted Section 2–725 narrowly. In *Binkley Co. v. Teledyne Mid-America Corp.*, 333 F.Supp. 1183 (E.D. Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir. 1972), for example, the court held that a warranty specifying that equipment could weld at a rate of 1,000 feet per fifty minute hour was not one that extended to future performance. The fact that the plaintiff was not able to test the welder's capabilities until it was installed and put into operation did not

halt the running of the statute of limitations. The court commented:

There is no reference to a future time in this language, and thus these words do not constitute an "explicit" warranty of future performance in and of themselves. Plaintiff claims that it was not able to test the welder's capabilities until some time after it obtained delivery and maintains that warranties made without explicit reference to time, the truthfulness of which cannot be ascertained at delivery, should be considered warranties of future performance within § 2–725(2). In this court's opinion, such construction of § 2–725(2) would make the point at which the statute begins to run depend upon the buyer's knowledge of the defect. This would directly conflict with § 2–725(2), which provides that a cause of action accrues when breach of warranty occurs "regardless of the aggrieved party's lack of knowledge of the breach." 333 F.Supp., at 1187. *See also Matlack, Inc. v. Butler Manufacturing Co.*, 253 F.Supp. 972 (E.D.Pa.1966).

■ RDL bases its whole argument that the warranty in question extended to future performance on its inability to discover any breach until the pier form was actually put into service. It points to no language in the contract, however, that explicitly warrants any future performance. Accordingly, I conclude that the limitations period began to run on November 17, 1970, when MLC tendered delivery. Therefore the action against MLC is time barred.

## II. MICRODOT

RDL's claim against Microdot is based upon Microdot's guaranty of MLC's performance, rather than on breach of warranty. The choice of laws question is the first thing that must be addressed.

■ RDL named Microdot as a defendant in the Delaware action, but, it will be recalled, RDL also filed suit against Microdot in Connecticut where Microdot has its principal place of business. The transfer

---

**3.** Plaintiff's Revised and Amended Answers to Defendants' Interrogatories No. 8.

here to Delaware, upon Microdot's motion, occurred later. A transfer pursuant to 28 U.S.C. § 1404(a), when it is granted upon the motion of the defendant, does not effect a change in the law to be applied. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Headrick v. Atchison, Topeka & Santa Fe Ry.,* 182 F.2d 305 (10th Cir. 1950). This is so even when the suit was brought originally in a jurisdiction because of a favorable statute of limitations. *Headrick, supra,* at 309. Raising the specter of "forum shopping", Microdot argues that *Headrick* should not be applied here. But I know of no policy against forum shopping for purposes of avoiding a short limitations period. In *Van Dusen v. Barrack, supra,* the Supreme Court quotes with approval a passage from *Headrick* that acknowledges a plaintiff's right to forum shop for this purpose.[4] RDL is thus entitled to have this Court apply the same law that the federal court and, under the doctrine of *Klaxon Co. v. Stentor Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the state courts of Connecticut would have applied.

■ In a conflict of laws situation, Connecticut applies its own statute of limitations except when the liability sought to be enforced is created by a statute of a foreign jurisdiction and the cause of action is inseparable from the remedy. *Thomas Iron Co. v. Ensign-Bickford Co.,* 131 Conn. 665, 42 A.2d 145, 146 (1945). This case does not fall within the exception and, unlike some other jurisdictions, Connecticut does not have a "borrowing statute" that would direct its courts to bar an action that would be barred by the statute of limitations in the state whose substantive law governs. Thus, the Connecticut limitations period for

actions on a guaranty, which is six years,[5] controls in this case.

■ Applying the six-year limitation, this action would not be barred. Microdot argues, however, that because the action against MLC, the principal, is barred, the action against the guarantor must likewise fail. In support of this, *Bernd v. Lynes,* 71 Conn. 733, 43 A. 189 (1899), is cited. *Bernd* appears to have been overruled, however. In *City of Bridgeport v. U. S. Fidelity & Guaranty Co.,* 105 Conn. 11, 134 A. 252 (1926), the Connecticut Supreme Court of Errors held that it would not extend *Bernd* to the situation where the statute of limitations applicable to the guarantor exceeds that applicable to the principal.[6] The court said:

> Where the principal and surety, as in the instant case, are subject to different statutory periods of limitation, the broad doctrine of [*Bernd*] is not applicable. If so, we should have a situation where the statutory period of limitations of 17 years upon a contract under seal was by rule of law held inapplicable in a case where the period of limitation for the principal had run. A ruling so conflicting with a valid statutory provision could not stand; it would be beyond the power of the court to make.

134 A., at 259. I can find no authority to indicate that *City of Bridgeport* is no longer the law of Connecticut, nor do I see any grounds upon which to distinguish it from the present case. Thus, the six year limitation applies to Microdot and the action against it will go forward.

### III. MARYLAND SHIPBUILDING

■ In its third party action, Microdot seeks to hold Maryland Shipbuilding liable

---

4. "[The plaintiff] had a legal right to select any forum where the defendant was amenable to process and no contention is made here that the case was not properly brought in . . . New Mexico . . . .

"... [I]f § 1404(a) is applicable and a transfer to the California court is ordered for the convenience of the parties, the witnesses and in the interests of justice, there is no logical reason why it should not remain a

New Mexico case still controlled by the law and policy of that state." Id., at 309–310. 376 U.S., at 632, 84 S.Ct. at 817.

5. Conn.Gen'l.Stats. § 52–579.

6. I can imagine no other circumstances in which the question would arise and, therefore, it would appear that *Bernd* no longer has any viability.

for any damages RDL may recover from Microdot. In response, Maryland Shipbuilding first contends, and I agree, that the Microdot third party complaint presents a breach of warranty theory for recovery and, on that theory, Microdot is barred whether I apply the three year statute of limitations applicable to contracts for services,[7] or the four year statute for actions involving the sale of goods. UCC § 2–725. The warranty action accrued on November 17, 1970, when Maryland Shipbuilding tendered the goods and the third party action was commenced on December 19, 1974.

 Microdot argues, however, that it is entitled to collect from Maryland Shipbuilding on a common law indemnity theory if it can show that Maryland Shipbuilding was negligent in fabricating the pier form.[8] Under the liberal pleading rules of the Federal Rules of Civil Procedure, it would be improper to dismiss the third party complaint if it could be amended to avoid the statute of limitations problem posed by the breach of warranty cause of action. *L. E. Talcott & Sons, Inc. v. Aurora Corp.*, 176 F.Supp. 783 (D.Del.1959). Accordingly, I have considered whether Microdot can go forward against Maryland Shipbuilding on an indemnity theory. I conclude that it cannot.

The general rule for indemnity is stated as follows:

A person, who in whole or in part, has discharged a duty *which is owed by him but as between himself and another should have been discharged by the other*, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct. [Emphasis supplied].

*Restatement of Restitution* § 76 (1937). If Microdot is held liable here, it will be on the basis of its contract of guaranty, that is, its agreement to hold RDL harmless from any damages resulting from RDL's contract with MLC. Maryland Shipbuilding owed no duty to RDL under this "hold harmless" contract. In fact, it was a total stranger to the RDL–Microdot contract: Maryland Shipbuilding in no way participated in it or consented to it. The only duties Maryland Shipbuilding had in this transaction arose from its contract with MLC, a contract on which the statute of limitations has run. Microdot, by unilaterally guaranteeing MLC's performance could not extend Maryland Shipbuilding's exposure under that contract.

 If Microdot were to have some cause of action against Maryland Shipbuilding, it would be in its role as the guarantor of MLC's performance. Upon fulfilling its guarantee, Microdot will be subrogated to the rights of RDL. But it will obtain no greater rights. *See, e. g., Insurance Company of North America v. Carnahan*, 446 Pa. 48, 284 A.2d 728 (1971). When the statute of limitations runs out against the insured, as is the case with respect to any suit RDL might have elected to bring against Maryland Shipbuilding in this matter, it runs out against the subrogee. *Id.*, 284 A.2d, at 729–730. Thus, there appears to be no theory under which Microdot would be entitled to recover from Maryland Shipbuilding. Accordingly, Maryland Shipbuilding's motion to dismiss will be granted.

## MEMORANDUM OPINION ON REARGUMENT

Following this Court's Opinion and Order of December 30, 1976,* defendants and third-party plaintiffs Microdot, Inc. ("Mi-

---

7. The third party defendant argues that its contract with MLC was for fabrication only and did not involve the sale of goods. If that is the case, pursuant to 10 Del.C. §§ 8106 and 8121 (1974), three years would be the maximum limitation period.

8. *Southern Arizona York Refrigeration Co. v. Bush Mfg. Co.*, 331 F.2d 1 (9th Cir. 1964), holds that a party who has been held liable on a breach of warranty theory can sue his vendor who is primarily liable, on an indemnity theory but that the plaintiff in the indemnity suit must establish negligence. The judgment in the breach of warranty action does not constitute collateral estoppel with respect to negligence.

* *Raymond–Dravo–Langenfelder v. Microdot et al.*, 425 F.Supp. 614 (D.Del.1976).

crodot") and Maryland Liquidating Company ("MLC") filed a timely motion for reargument which was granted in part and denied in part. In that portion upon which reargument was granted and the parties heard, Microdot asked leave of Court to file a third-party complaint against MLC, who in turn has represented that it will file a fourth-party complaint against Maryland Shipbuilding & Drydock Company ("Maryland Ship"). The legal theory behind this request is that if RDL secures a judgment against Microdot on its guaranty of MLC's performance, Microdot will have a right of indemnity against MLC, its principal. [Citing *United States Fidelity & Guaranty Co. v. Gray's Admr's.*, 6 Boyce 161, 29 Del. 161, 97 A. 425 (1916)]. In turn, if MLC is held liable to indemnify Microdot and can establish that its liability was occasioned by the negligence of Maryland Ship, Maryland Ship would be required to indemnify MLC. [Citing *Arizona York Refrigeration Co. v. Bush Mfg. Co.*, 331 F.2d 1 (9th Cir. 1964)].

Maryland Ship does not object to the granting of the Microdot–MLC request, although it reserves the right to hereafter challenge the legal theory which underlies it. I agree with the parties that the validity of this theory is not currently before the Court. It is sufficient for present purposes to conclude that it is a tenable theory which was not ruled upon in this Court's Opinion of December 30, 1976. Accordingly, Microdot's request for leave to file a third-party complaint aginst MLC will be granted. MLC may file its complaint against Maryland Ship within the period specified in Rule 14.