**Michael J. FRANCHETTI, Jr., and Diane P. Franchetti, Plaintiffs,**

v.

**INTERCOLE AUTOMATION, INC., a California corporation, and Stewart Bolling & Company, Defendants.**

Civ. A. No. 80–361.

United States District Court,
D. Delaware.

Oct. 1, 1981.

David H. Erisman, Conner, Daley, Erisman & van Ogtrop, Wilmington, Del., for plaintiffs.

B. Wilson Redfearn, Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendants.

OPINION

MURRAY M. SCHWARTZ, District Judge.

This action for personal injuries was brought by Michael J. Franchetti and his

**18.** D.I. 15; a similar motion to stay is pending before the Honorable William Matthew Byrne of the California Court. D.I. 18, Ex. D.

wife Diane P. Franchetti, both citizens of Delaware, against Intercole Automation, Inc., a California corporation, and Stewart Bolling & Company, an Ohio corporation. Jurisdiction is based on diversity. Presently before the Court is plaintiffs' motion *in limine* for a determination that the doctrine of strict liability in tort applies in an action for personal injuries caused by defectively designed equipment manufactured, sold and delivered prior to the effective date of Delaware's Uniform Commercial Code ("U.C.C."). The matter was referred and assigned to the Honorable N. Richard Powers pursuant to 28 U.S.C. § 636.

Plaintiffs' motion raises a difficult and subtle point of law which has not yet been addressed by the Delaware Supreme Court. The Magistrate recommended the motion be denied; that recommendation as well as its rationale is adopted. The importance and novelty of the issue raised, coupled with a desire to emphasize the need to recognize the Delaware Supreme Court's deference to the Delaware legislature, compels the Court to write separately.

It is undisputed that on October 3, 1979, plaintiff Michael J. Franchetti suffered injuries when his hand accidentally became caught in a machine operated by his employer Gates Engineering Company. The machine was manufactured, sold and delivered by the defendants[1] in 1949.[2]

The complaint seeks recovery against the manufacturer under theories of negligence and strict liability in tort. Plaintiffs' motion *in limine* seeks a determination as to the applicability of the latter doctrine to the instant case.

■ As a federal court sitting in diversity, the Court must apply Delaware law. *Erie Railroad Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Porter v. Hollander*, 494 F.Supp. 151 (D.Del.1980). In so doing it "must forsake its realm of expertise and assume the aspect of a court of the forum state." *Becker v. Interstate Properties*, 569 F.2d 1203, 1204 (3d Cir. 1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In those cases in which the state's highest court has recently addressed the issue presented the Court's task is easy. "The state's highest court is the best authority on its own law." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1965).

■ The difficulty arises when, as here, the state's highest court has not yet addressed the issue. In such a case the Court is forced to predict how the state's highest court would decide if it were confronted with the problem. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1981). In so doing the court must consider not only previously decided cases but the doctrinal trends and policy considerations which inform those cases. *Becker v. Interstate Properties*, 569 F.2d at 1205–06. In short, the court must examine decisions of lower state courts, *Coleman v. Taub*, 487 F.Supp. 118, 123 (D.Del.1980), *rev'd on other grounds*, 638 F.2d 628 (3d Cir. 1981); as well as "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d at 657; *Porter v. Hollander*, 494 F.Supp. at 154.

Under Delaware law as it existed prior to the adoption of the U.C.C. (effective June 30, 1967), a manufacturer was liable to a person not in privity only where the manufacturer knew that if the product were defective it would either be imminently dangerous to life and limb or likely to become so when put to its intended use. *Moore v. Douglas Aircraft Co.*, 282 A.2d 625 (Del.Super.1971). That limitation existed regardless of whether the action was founded upon tort or contract. *Nacci v. Volks-*

---

1. At the time defendant Stewart Bolling & Company was an independent corporation. It is now a division of defendant Intercole Automation, Inc.

2. The machine, which was originally sold to another manufacturer, was resold to plaintiff's employer in 1956.

*wagen of America, Inc.*, 325 A.2d 617 (Del. Super.1974); *Ciociola v. Delaware Coca-Cola Bottling Company*, 53 Del. 477, 172 A.2d 252 (1961). The Delaware Supreme Court refused to follow the then rapidly developing trend by imposing absolute or strict liability upon a manufacturer for injuries caused by defects in its product holding that such a change in the law must come from the legislature. *Ciociola*, 172 A.2d at 257.

The legislature responded to *Ciociola* by enacting U.C.C., 6 Del.C. § 2–318, which abrogated the common law requirement of privity.[3] The Delaware Study Comment[4] makes it clear that one of the principal objectives of the section was to alter the rule of *Ciociola* in order to bring Delaware into conformity with the modern trend in products liability law. *Nacci v. Volkswagen of America, Inc.*, 325 A.2d at 619. The legislature did not, however, overrule *Ciociola's* rejection of strict tort liability. Thus for a time it appeared "that by their silence on the issue and by their emphasis on liability based on negligence and warranty, the Delaware state courts [had] rejected [Restatement (Second) Torts] § 402A strict liability in tort." *Handy v. Uniroyal, Inc.*, 327 F.Supp. 596, 607 (D.Del.1971).

Then, in 1976, the Delaware Supreme Court decided *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (Del.Supr.1976). In *Martin* the Court held that in enacting the U.C.C. the legislature had not preempted the development of products liability law at least in the context of a bailment-lease transaction. Hence the Court was "free, in the common law tradition, to apply the doctrine of strict tort liability to a bailment-lease," 353 A.2d at 584, and it proceeded to do so.

The actual holding of *Martin* was quite limited. As noted, the Court simply applied strict liability in a bailment-lease situation. Several subsequent decisions of lower Delaware courts have in fact held that the doctrine is limited to such situations. *Demuth v. Dresser Industries, Inc.*, C.A. No. 80C–JA–83 (Del.Super. August 18, 1981) (O'Hara, J.); *Baker v. Oliver Machinery Co.*, C.A. No. 80C–JA–11 (Del.Super. April 29, 1981) (Stiftel, J.); *Wells v. Massey-Ferguson*, C.A. No. 430, 1975 (Del.Super. May 17, 1976) (Walsh, J.). However, the enthusiasm with which the Court embraced the doctrine and its willingness to allow the common law to "grow to fulfill the requirements of justice as dictated by changing times and conditions," *Martin*, 353 A.2d at 587, could be viewed as indications that the Court was ready to expand the doctrine to cover any area not explicitly preempted by the legislature. Such a view would gain support from the Court's *dictum* in *Castaldo v. Pittsburgh-Des Moines Steel Co.*, 376 A.2d 88, 91 n.2 (Del.Supr.1977), to the effect that the legislative-preemption problem would not arise where, as in the instant case, the transaction occurred prior to the effective date of the U.C.C.

Whatever the expectation in 1977, the more recent opinions of the Delaware Supreme Court make it clear that *Martin* did

---

**3.** 6 Del.C. § 2–318 provides:

A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

**4.** The comment which appears as an annotation to 6 Del.C. § 2–318 reads in pertinent part:

The case law in most of the larger commercial states has resulted in large measure in the abolition of the privity requirement and the adoption of a rule which is substantially in accord with the version of § 2–318 adopted by Delaware. The Delaware Uniform Commercial Code Committee is of the opinion that the recommended amendment is reasonable, is in accord with modern commentaries, and will bring the Delaware law in substantial conformity with the law of a number of states (including the larger commercial states) which have adopted the Code. The variation in the language of § 2–318 is required to accomplish this purpose because of the decision of the Delaware Supreme Court in *Ciociola v. Delaware Coca Cola Bottling Co.*, 53 Delaware 477, 172 A.2d 252 (1961). In that case the Court held that Delaware was committed to the common law rule governing actions for breach of implied warranties, and that any change would have to be made by the Legislature rather than the Judicial Branch.

not mark the beginning of a wholesale expansion of the doctrine of strict tort liability. In *Cline v. Prowler Industries of Md., Inc.*, 418 A.2d 968 (Del.Supr.1980) (en banc), the Court was presented with the issue it had expressly reserved in *Martin*: whether the U.C.C. provisions on sales of goods preempt the entire field thus precluding the extension of the doctrine of strict tort liability to sales. After an extensive review of the basic concepts and development of both the U.C.C. and the doctrine of strict tort liability, the court concluded that the application of strict tort liability to sales transactions would constitute impermissible judicial legislation. 418 A.2d at 971.

The *Cline* Court recognized that, though they parallel each other, the U.C.C. contains defenses alien to strict tort liability. A plaintiff's recovery under the U.C.C. may be affected by the requirement of notice of defect to the seller or manufacturer, 6 Del.C. § 2–607(3)(a), the existence of disclaimers, 6 Del.C. § 2–316 or, most importantly in the context of the instant case, the term of the applicable contract statute of limitations, 6 Del.C. § 2–725. 418 A.2d at 974. The creation of a parallel cause of action in tort would, in the opinion of the Court, have been tantamount to a judicial repeal of those provisions. *Id.* at 979; *see* Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective Product Cases*, 18 Stan.L.Rev. 974 (1966).

Plaintiffs urge that *Cline* is not applicable to the instant case. They note that the transactions involved here occurred prior to the effective date of the U.C.C. and that the Uniform Sales Act which was in force at the time was merely a codification of the common law regarding contracts of sale. *See Cline*, 418 A.2d at 976; *Chapman v. Brown*, 198 F.Supp. 78 (D.Hawaii 1961), *aff'd*, 304 F.2d 149 (9th Cir. 1962) (Hawaii Uniform Sales Act did not preempt the field). Thus, they argue the legislature has

not preempted the field, and the courts are free to develop and apply the common law doctrine of strict tort liability, as to any transaction occurring prior to June 30, 1967.

Plaintiffs' argument that the U.C.C. is inapplicable to this case misses the point. Although the precise holding of *Cline* does not apply to this case, it is clear that the Court's rationale was considerably broader than its holding. The development of Delaware products liability law had been frozen, for a time, by the Court's holding in *Ciociola*. There could be no further progress without some legislative action.

■ At that point the legislature had several options; it could have done nothing; it could have adopted the standard version of U.C.C. § 2–318; it could have adopted strict tort liability by statute;[5] or as was in fact done it could create a hybrid statute incorporating aspects of both tort and warranty law.[6] In choosing the course taken the legislature indicated the path that the development of products liability law was to follow in Delaware, at least in the sales context. That choice leaves no room for strict tort liability in sales transactions.

■ The U.C.C. grants a right of recovery, which at least as to privity and scope of injury, is nearly coextensive with strict tort liability. The scope of that recovery reflects the legislature's understanding that there would be no remedy beyond negligence in products liability cases involving sales transactions outside of the Code as well as its desire to conform the law of Delaware to the case law in most of the larger commercial states. *Cline*, 418 A.2d at 979; Delaware Study Comment, *supra* n.4. The fact that the transactions involved in this case predate the U.C.C. is unimportant. In *Martin* the Delaware Supreme Court acted to fill what it perceived as a gap in the law—the U.C.C. provided no

---

5. As noted by the Court in *Cline*, such statutes have been adopted in several states. 418 A.2d at 980. *See, e. g.*, Ark.Stat.Ann. §§ 85–2–318.2, 85–2–318.3 (1973); Ga.Code Ann. § 105–106 (1968); Me.Rev.Stat. tit. 14, § 221 (1973); S.C. Code § 66–371 *et seq.* (1974).

6. The standard version of § 2–318 was itself in some ways a hybrid, but as the Delaware Study Comment, *supra* n.4 and the *Cline* court point out, the Delaware version incorporates a significantly greater departure from traditional warranty law.

remedy for the bailment-lease situation; thus the legislature could not be said to have indicated the course that the development of that area of law was to follow. The Code does, however, provide a remedy for sales transactions, the remedy deemed most appropriate by the legislature.

If the Court were to hold that the doctrine of strict tort liability was applicable to this case it would disrupt the delicate balance the legislature has struck between the competing policies which must be served in this area. As noted, the machine in question was manufactured and delivered in 1949. If the U.C.C. did apply to the transaction in question plaintiffs action would be barred by the Code's statute of limitations which provides that an action must be brought within four years of when it accrues and that a "cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach.*" 6 Del.C. §§ 2–725(1), 2–725(2) (emphasis supplied); *Johnson v. Hockessin Tractor, Inc.,* 420 A.2d 154 (Del.Supr.1980) (four year statute of limitations applicable to actions for breach of warranty). In effect plaintiffs' ask the Court to create a situation in which a manufacturer of defective goods delivered prior to June 30, 1967 could be found liable absent proof of negligence for personal injuries resulting therefrom indefinitely while a manufacturer who delivered goods after June 30, 1967 could remain liable for only four years. Such a result would be inconsistent with the legislature's enactment and in the Court's opinion would not be sanctioned by the Delaware Supreme Court.

In *Demuth v. Dresser Industries, Inc.,* C.A. No. 80C–JA–83 (Del.Super. August 18, 1981) (O'Hara, J.), the only Delaware case Court or counsel have found which discusses the issue, the Court reached the same result. As the opinion is not reported the text of the relevant portion will be set out in the margin.[7] *See also Baker v. Oliver Machinery Co.,* No. 80C–JA–11 (Del.Super. April 29, 1981) (Stiftel, J.) (Delaware courts have not yet extended strict tort liability beyond the bailment-lease situation and any future extension should be made by the Supreme Court.).

The Magistrate noted that this was not an easy case. The Court agrees. The Delaware Supreme Court could decide to adopt the doctrine of strict tort liability in any area not specifically covered by the U.C.C. which would include all pre-1967 transactions. For the reasons stated above, I do not think it would do so. As the Magistrate also noted, however, by filing their action in this Court plaintiffs have deprived themselves of the opportunity to obtain a definitive interpretation of Delaware law.

For the foregoing reasons plaintiffs' motion *in limine* will be denied.

7. Prior to the enactment of the Delaware Code, Delaware courts viewed an implied warranty claim as inextricably tied to sales contracts, rather than connected to the concept of strict liability in tort. *Cline v. Prowler Industries of Md., Inc.,* Del.Supr., 418 A.2d 968 (1980); *Ciociola v. Delaware Coca-Cola Bottling Company,* 3 Delaware 477, 172 A.2d 252 (1961); *Susan R. Baker v. Oliver Machinery Co.,* Del.Supr., No. 80C–JA–11 (Order of J. Stiftel, April 29, 1981). As such, the applicable statute of limitations was the three year limitation period as set forth in 10 *Del.C.* § 8106. *Nardo v. Guido DeAscanis & Sons, Inc.,* Del.Super., 254 A.2d 254 (1969).

The adoption of the Code in Delaware resulted in its preeminence in the sales field of the law. *Cline v. Prowler Industries of Md., Inc., supra.* The only exception to the general rule that the doctrine of strict liability cannot coexist with the Delaware Code is the bailment-lease situation. *Cline v. Prowler Industries of Md., Inc., supra; Martin v. Ryder Truck Rental, Inc.,* Del.Supr., 353 A.2d 581 (1976).

Here, plaintiffs' Counts I and II [sounding in strict tort liability], if not premised upon the Code, are ex contractu. Irrespective of a determination that the Code governs the sale in question or that the law existing prior to the enactment of the Code applies, plaintiffs cannot employ the theory of strict tort liability.