Orville **SELLON** and Levi Baggs, Administrator of the Estate of Alice Baggs, deceased, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION,** a corporation of the State of Delaware, Defendant and Third-Party Plaintiff,

v.

Christine F. **SMITH,** Defendant.

Civ. A. No. 79–611.

United States District Court, D. Delaware.

Sept. 28, 1983.

See also, D.C., 521 F.Supp. 1094.

William J. Wier, Jr., and Michael T. Ward, of Kreshtool, Wier & Waserstein, Wilmington, Del., for plaintiffs.

Somers S. Price, Jr., and Sue L. Robinson, of Potter, Anderson & Corroon, Wilmington, Del., for defendant.

Wayne N. Elliott, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for third-party defendant.

1. Defendant, GMC, has filed a third-party complaint against Christine F. Smith. Defendant alleges that Smith negligently operated her

## OPINION

MURRAY M. SCHWARTZ, District Judge:

Plaintiffs, Orville Sellon and Levi Baggs, administrator of the Estate of Alice Baggs, have brought suit against General Motors Corporation ("GMC") for negligence, breach of warranty, fraud and strict liability in tort. The plaintiffs allege that the defendant improperly designed the fuel storage system of a 1973 Oldsmobile Omega which is alleged to have exploded in a rear-end collision which resulted in the death of Alice Baggs and injury to Sellon. Plaintiffs seek to recover compensatory and punitive damages. Jurisdiction is present pursuant to 28 U.S.C. § 1332(a)(1).[1]

Presently before the Court is the defendant's motion for summary judgment. Defendant asserts that the plaintiffs' warranty claims in Count II are time-barred pursuant to the four year statute of limitations of 6 Del.C. § 2–725(2). Additionally, defendant maintains that plaintiffs' warranty claims are not cognizable under the law of Ontario, Canada in that the plaintiffs were not in privity of contract with the defendant at any time prior to the accident. Finally, defendant contends that the plaintiffs' claim of strict liability in tort in Count IV is not valid under Delaware law. For the reasons stated within, the defendant's motion for partial summary judgment will be granted.

## FACTUAL BACKGROUND

On January 13, 1978, plaintiffs were involved in an automobile accident in Delaware. While stopped at a red light their automobile, a 1973 Oldsmobile Omega, was struck in the rear by another vehicle driven by third-party defendant, Smith. At the time of the accident, the plaintiffs were Canadian citizens and residents of Ontario. Plaintiffs filed suit against defendant GMC on December 26, 1979.

The Omega involved in the accident was manufactured by the defendant. GMC sold

automobile when she struck the rear of the plaintiffs' Omega. (Doc. 12).

and delivered the automobile to General Motors of Canada, Ltd. of Oshawa, Ontario, Canada on May 31, 1973. The automobile was then sold to Jack McGee Chevrolet-Oldsmobile, Ltd. in Petersborough, Ontario on or about June 2, 1973. On October 24, 1973, H.N. Sellon, Orville Sellon's father, purchased the Omega from the Canadian dealer. The car was eventually sold to plaintiff Orville Sellon by his father, but the automobile remained registered in his father's name up to the time of the accident.

## I. BREACH OF WARRANTY

### a. *Choice of Law*

In ruling upon defendant's motion for summary judgment, it must first be determined which law governs plaintiffs' warranty claim. Where jurisdiction is based upon diversity, choice of law questions, including conflict of law rules, are governed by the law of the forum in which a federal court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The parties agree that under Delaware law a breach of warranty claim is to be treated as a contract rather than a tort claim for conflict of laws purposes. *Prashker v. Beech Aircraft Corp.*, 258 F.2d 602, 607 (3d Cir.1958), *cert. denied*, 358 U.S. 910, 79 S.Ct. 236, 3 L.Ed.2d 230 (1958); *Handy v. Uniroyal, Inc.*, 327 F.Supp. 596, 598 (D.Del.1971); *Quandt v. Beech Aircraft Corp.*, 317 F.Supp. 1009, 1012 (D.Del.1970). Although the parties express uncertainty as to whether contractual claims in Delaware are governed by the significant relationship test of the *Restatement (Second) Conflict of Laws* § 188 or the common law rule of

place of performance, they correctly conclude that under either rule, Canadian law governs the plaintiffs' warranty claims. The parties also agree that pursuant to Delaware's "borrowing statute", 10 *Del.C.* § 8121,[2] the plaintiffs' warranty claims are subject to the four year limitation period of 6 *Del.C.* § 2–725(2). *See Ontario Hydro v. Zallea Systems, Inc.*, 569 F.Supp. 1261 at 1265 (D.Del.1983).[3] The parties disagree, however, as to when the plaintiffs' cause of action accrued.

### b. *6 Del.C. § 2–725(2): The Future Performance Exception*

Plaintiffs contend, and the defendant does not object for purposes of this motion, that the warranty at issue consists of the following:

> To help protect you, every Olds provides all this for occupant protection:
>
> \* \* \* \* \* \*
>
> Fuel Tank impact security.

(Doc. 71, Ex. A at Bates No. 3–2501—1973 Oldsmobile brochure). Defendant argues that the warranty cited by the plaintiffs does not explicitly extend to future performance of the fuel tank under 6 *Del.C.* § 2–725(2), which provides:

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

---

**2.** 10 *Del.C.* § 8121 provides:

Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action. Where the cause of action originally accrued in favor of a person who at the time of such accrual ·was a resident of this

State, the time limited by the law of this State shall apply.

**3.** Under the law of Ontario, the plaintiffs' claim would be subject to a six year statute of limitations which would accrue at the time of the sale, October 24, 1973. *See* Ontario Limitations Act R.S.O.1970, c. 45(1)(g); *Ontario Hydro v. Zallea Systems, Inc.*, 569 F.Supp. at 1264–65. The plaintiffs' warranty claims would not be time barred under Ontario law.

Relying on *Jones & Laughlin Steel Corp. v. Johns-Mansville Sales Corp.*, 626 F.2d 280, 291 (3d Cir.1980); *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979) and *Raymond-Dravo-Langenfelder v. Microdot, Inc.*, 425 F.Supp. 614, 618 (D.Del.1976), defendant reasons that absent a specific reference to future performance, the general rule that a warranty claim accrues at the time of sale governs the plaintiffs' claim. Since the plaintiffs filed their claim four years after the sale to Sellon's father, defendant concludes that plaintiffs' warranty claims are time-barred.

In response, plaintiffs, relying on *Perry v. Augustine*, 37 Pa.D. & C.2d 416, 3 U.C.C. Rep.Serv. 735 (1965), argue that the warranty at issue explicitly refers to future performance. Plaintiffs reason that the warranty describes how the fuel tank will perform in the future when undergoing an impact. Since the plaintiffs could not have discovered the breach of the warranty until the impact, that is, the collision on January 13, 1978, plaintiffs argue that under section 2–725(2) their cause of action did not accrue until that date. In further support of their position, plaintiffs cite the Delaware Study Comment of 6 *Del.C.* § 2–725(2) which states that the future performance exception of section 2–725(2) is consistent with dicta expressed in *Gaffney v. Unit Crane and Shovel Corp.*, 117 A.2d 237, 239–41 (Del. Super.1955). Plaintiffs rely on *Gaffney* for the proposition that where a product is warranted to be able to perform under conditions which cannot be tested at the time of sale, a cause of action for breach of warranty accrues at the date of the discovery of the alleged breach and not the date of sale. The plaintiffs conclude that since the breach was discovered within four years of the filing of the complaint, the plaintiffs' action is timely under Delaware law.

An examination of cases and authorities construing section 2–725(2) indicates that the plaintiffs' position cannot withstand analysis. Almost without exception, the future performance exception of section 2–725(2) has been construed narrowly. *See*

*Jones & Laughlin Steel Corp. v. Johns-Mansville Sales Corp.*, 626 F.2d at 291 & n. 25; *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d at 819–20; *Raymond-Dravo-Langenfelder v. Microdot, Inc.*, 425 F.Supp. at 618; *South Burlington School District v. Calcagni-Frazier-Zajchowski Architects, Inc.*, 138 Vt. 33, 410 A.2d 1359, 1366 (1980); *but see, Perry v. Augustine*, 3 U.C.C.Rep.Serv. at 737. As the Court stated in *Raymond-Dravo-Langenfelder:*

> The difficulty of determining conformity with a warranty at the time of delivery is a problem common to many situations involving warranties by description. Such difficulties have not been regarded as controlling, however, in the absence of contract language explicitly warranting future performance. The drafters of the UCC decided that the seller's need to have some clearly defined limit on the period of its potential liability outweighed the buyer's interest in an extended warranty and reserved the benefits of an extended warranty to those who explicitly bargain for them.

425 F.Supp. at 618. Thus, the question of whether a warranty explicitly extends to future performance is essentially a matter of contract construction. 3 W. Hawkland, *Uniform Commercial Code Series*, § 2–725:02 at 428 (1982); J. White & R. Summers, *Uniform Commercial Code*, 341–42 (2d ed. 1980).

In the instant case, the warranty cited by the plaintiffs does not contain an explicit reference to future performance. The fact that the Omega was not likely to undergo an impact at the time of sale does not indicate that the warranty explicitly extended to the future performance of the fuel tank. Rather, such language constitutes a warranty that at the time of sale the fuel tank was manufactured in such a manner that it would afford passengers security from impacts. If the conclusion were otherwise, the defendant would be warranting that the fuel tank would operate safely for the life of the car. Without an explicit manifestation of intent by the

parties to do so, such an intent should not be inferred. *See South Burlington School District,* 410 A.2d at 1366.

 Without an explicit extension to future performance, the plaintiffs' lack of knowledge of the defect is irrelevant. Although *Perry v. Augustine* supports a contrary conclusion, *see id.,* 3 U.C.C.Rep.Serv. at 737, the case has been widely criticized and will not be followed here. *See* J. White & R. Summers, *Uniform Commercial Code* at 342. Section 2–725(2) states that a "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Reasonable discovery of the defect is only relevant where the warranty explicitly extends to future performance. *See Raymond-Dravo-Langenfelder,* 425 F.Supp. at 618. A contrary conclusion

> would make the point at which the statute begins to run depend upon the buyer's knowledge of the defect. This would directly conflict with § 2–725(2), which provides that a cause of action accrues when breach of warranty occurs "regardless of the aggrieved party's lack of knowledge of the breach."

*Raymond-Dravo-Langenfelder,* 425 F.Supp. at 618, *quoting Binkley Co. v. Teledyne Mid-America Corp.,* 333 F.Supp. 1183, 1187 (E.D.Mo.1971), *aff'd.,* 460 F.2d 276 (8th Cir. 1972). The impossibility of discovering a defect at the time of sale does not create a warranty that extends to future performance.

 *Gaffney v. Unit Crane and Shovel Corp.* does not warrant a different conclusion. In *Gaffney,* the Court stated in dicta that:

> It must be conceded that there are authorities which hold that where the warranty refers to something to happen in the future, the statute of limitations does not begin to run until after the future time is reached.

117 A.2d at 239. *See also* 6 *Del.C.* § 2–725(2) Delaware Study Comment. In dis-

cussing the rule the Court seems to have indicated that ability to discover a defect is relevant in determining whether a warranty extends to future performance. 117 A.2d at 239. The Court, however, did not expressly adopt this rule. Moreover, the rule as stated in *Gaffney* does not contain certain provisions present in section 2–725(2). In that section an extension to future performance must be *explicit.* In addition, section 2–725(2) states that a buyer's knowledge of a defect is not relevant. In light of the differences between the rule set forth in dicta in *Gaffney* and section 2–725(2), the appropriate conclusion to be drawn is that the Delaware Supreme Court would adopt the narrow interpretation of section 2–725(2) adopted by almost every court construing the statute. Pursuant to section 2–725(2), therefore, the plaintiffs' cause of action for breach of warranty accrued on October 24, 1973, more than four years prior to the initiation of the present action.[4]

*c. Fraudulent Concealment—Tolling of the Statute of Limitations*

 Having held that the plaintiffs' warranty claims are time-barred under section 2–725(2), the next issue to be addressed is plaintiffs' contention that the statute of limitations should be tolled pursuant to the doctrine of fraudulent concealment. According to 6 *Del.C.* § 2–725(4), the four year limitations period set forth in section 2–725(2) does not alter the law on tolling a statute of limitations. Under Delaware law, a defendant's fraudulent concealment of a cause of action may toll the statute of limitations. *See Taylor v. Wilmington Medical Center, Inc.,* 538 F.Supp. 339, 342 (D.Del.1982); *Hood v. McConemy,* 53 F.R.D. 435, 447 (D.Del.1971); *Hiznay v. Strange,* 415 A.2d 489, 491–92 (Del.Super.1980); *Giordano v. Czerwinski,* 216 A.2d 874, 876 (Del.1966). Knowledge of the alleged wrong and an affirmative act of concealment by a defendant are generally deemed

---

4. Plaintiffs' request to defer decision of this issue pending further discovery will not be granted. If plaintiffs discover additional war-

ranties which they believe explicitly extend to future performance then they may move for reconsideration.

to be essential for the application of the doctrine. *Tilden v. Anstreicher, M.D.,* 367 A.2d 632, 635 (Del.1976). A possible exception to the requirement of an affirmative act of concealment may arise where a plaintiff and defendant are in a fiduciary relationship which places upon the defendant an obligation to inform the plaintiff of the facts underlying his claim. *See Hood v. McConemy,* 53 F.R.D. at 447. Plaintiffs seek to rely upon this fiduciary exception.

■ In their complaint they allege that at the time of sale, the defendant knew of the defects in the design and manufacture of the Omega fuel storage system but failed to warn the purchasing public. (Doc. 1, ¶ 15). Plaintiffs maintain that under 15 U.S.C. § 1411,[5] the defendant was required to disclose to Omega owners any known defects in the fuel storage system. In addition, plaintiffs argue that under *Wilhelm v. Globe Solvent Co.,* 373 A.2d 218 (Del.Super. 1977), the defendant was obligated under the common law to warn consumers of any known defects in the system. Moreover, plaintiffs maintain that their claim of fraudulent concealment raises material issues of fact which preclude the grant of summary judgment on the limitations issue. In response, defendant maintains that any statutory or common law duty to warn did not create a fiduciary relationship which would warrant the tolling of the statute of limitations.

Plaintiffs' attempt to toll the statute of limitations is without merit. Plaintiff Sellon was a secondary purchaser of an automobile sold in Ontario. Plaintiffs have cited no authority to support the contention that the defendant was obligated under 15 U.S.C. § 1411 to disclose known defects to persons who purchased GMC automobiles in Canada, let alone secondary Canadian purchasers who are not registered owners. Moreover, any duties arising pursuant to section 1411 and the common law duty to warn do not create a fiduciary relationship sufficient to require the disclosure of facts known to the defendant which may underlie the plaintiffs' cause of action. In *Hood v. McConemy* the Court stated that "in a confidential and fiduciary situation, a relationship of trust is developed which imposes a greater duty to disclose information upon the individual in the fiduciary capacity." 53 F.R.D. at 447. The relationship between a consumer and a manufacturer cannot be likened to that of a lawyer and a client as in *Hood* where the Court found that tolling would be proper for a failure to inform without an affirmative misrepresentation.

In addition, it is uncertain that the Delaware Supreme Court would recognize the exception to the requirement of an affirmative misrepresentation where the defendant is in a fiduciary relationship with a plaintiff. In *Tilden v. Anstreicher, M.D.,* 367 A.2d 632 (Del.1976), decided after *Hood,* the Delaware Supreme Court stated that "the doctrine of fraudulent concealment requires ... affirmative action on the part of the physician." *Id.* at 634–35. *See also Taylor v. Wilmington Medical Center, Inc.,* 538 F.Supp. at 343. It is unlikely that a manufacturer's silence could toll a statute of limitations, while a doctor's silence to his own patient would not.

Whether or not the fiduciary exception is recognized in Delaware, the plaintiffs' allegations do not warrant the tolling of the statute of limitations. The defendant was not in such a relationship with the plaintiffs that its alleged failure to warn the plaintiffs of known defects in the Omega fuel storage system would require tolling of the statute of limitations. Summary judgment

---

5. 15 U.S.C. § 1411 states:
 If a manufacturer—
 (1) obtains knowledge that any motor vehicle or item of replacement equipment manufactured by him contains a defect and determines in good faith that such defect relates to motor vehicle safety; or
 (2) determines in good faith that such vehicle or item of replacement equipment does not comply with an applicable Federal motor vehicle safety standard prescribed pursuant to section 1392 of this title;
 he shall furnish notification to the Secretary and to owners, purchasers, and dealers, in accordance with section 1413 of this title, and he shall remedy the defect or failure to comply in accordance with section 1414 of this title.

will be entered, therefore, in favor of the defendant on the ground that the plaintiffs' warranty claims are time-barred.

#### d. The Merits of the Plaintiffs' Warranty Claims

██ Even if the plaintiffs' warranty claims were timely, the defendant would be entitled to summary judgment. As a general rule, under the law of Ontario, contractual privity is required in order to sue for breach of contract, including breach of warranty. See Wells (Merstham) Ltd. v. Buckland Sand and Silica, Ltd., [1965] 2 Q.B. 170. An exception to this general rule has been recognized in situations where a buyer, relying on the promises of a manufacturer, purchases a product from a third party for whom the manufacturer is not responsible. Id. at 180. Report on Products Liability, Ontario Law Reform Commission 22–23 (1979). The rule has been summarized as follows:

> A collateral contract may be said to exist when a promise is given by A to C, prior to the making of the main contract between B and C, but for which that contract would not have been made.

Report on Products Liability at 22 n. 84, 22–23. See Wells (Merstham) Ltd. v. Buckland Sand and Silica, Ltd., [1965] 2 Q.B. at 180.

██ In the instant case, the plaintiff does not even allege that he entered into a contract of sale with his father on the basis of any warranties made to him by the defendant. Thus, it is clear that the collateral contract exception does not apply in this case. Absent privity of contract between the plaintiffs and GMC, the defendant is entitled to summary judgment, even if the plaintiffs' warranty claims were timely.[6]

In summary, the defendant is entitled to summary judgment on the plaintiffs' warranty claims on the basis that they are time-barred, and, alternatively, on the ground that the plaintiffs were not in privity of contract with the defendant.

### II. STRICT TORT LIABILITY

██ In Count IV, plaintiffs claim that defendant GMC is strictly liable for injuries resulting from the use of an allegedly defective 1973 Omega. Defendant seeks summary judgment on the ground that strict liability in tort fails to state a cause of action under Delaware law.

As a preliminary matter, the parties properly conclude that under the doctrine of lex loci delicti the plaintiffs' tort claims are governed by Delaware law. See Friday v. Smoot, 211 A.2d 594, 595 (1965). See also Cropper v. Rego Distribution Center, Inc., 542 F.Supp. 1142, 1147 (D.Del.1982). The accident and the plaintiffs' injuries all occurred in Delaware. The parties disagree, however, as to whether a cause of action for strict tort liability would be recognized by the Delaware Supreme Court under the somewhat unique circumstances of this case.

██ In Cline v. Prowler Industries of Maryland, Inc., 418 A.2d 968 (Del.Super. 1980), the Delaware Supreme Court held that in enacting Article Two of the Uniform Commercial Code ("U.C.C.") "the General Assembly did not intend to permit the adoption of a competing theory of liability in cases involving the sales of goods and, thus, preempted the field." Id. at 980. See Cropper v. Rego Distribution Center, Inc., 542 F.Supp. at 1147; Franchetti v. Intercole Automation, Inc., 523 F.Supp. 454, 459 (D.Del.1981). Plaintiffs seek to distinguish Cline on the ground that the plaintiffs' warranty claims are governed by the law of Ontario and, therefore, the recognition of strict tort liability in this case would not establish a judicially created competing theory of liability to the U.C.C. as adopted in Delaware. Plaintiffs further argue that

**6.** Plaintiffs attempt to avoid summary judgment by raising the possibility that under the law of Ontario they are third-party beneficiaries of any contractual warranties between GMC and Sellon's father. Specifically, plaintiffs assert that the use of the word "occupant" rather than "buyer" indicates that GMC intended the warranty to extend to any occupant of the car and not just the buyer. For the reasons stated supra at Part I(b) & (c), the claim is time-barred. Consequently, this contention will not be considered further.

the failure to allow their claim to proceed would work an injustice. Plaintiffs' argument proceeds as follows. Under the law of Ontario, a plaintiff has broader remedies in tort than in contract in a products liability case. In Delaware, the opposite is true. In many respects, contractual causes of action set forth in the U.C.C. for breach of warranty are broader than those in tort which are limited to claims of negligence. Due to the unique facts in this case, applicable conflict of law rules operate to deprive the plaintiffs of the broadest remedies in both Ontario and Delaware. Plaintiffs conclude that since the recognition of strict tort liability in this case would not frustrate the legislature's purpose in enacting the U.C.C., the equities and uniqueness of the plaintiffs' case warrant that they be allowed to proceed on a theory of strict tort liability.

In support of their position, plaintiffs cite *Martin v. Ryder Truck Rental, Inc.,* 353 A.2d 581, 584 (Del.Super.1976) for the proposition that the applicability of the doctrine of strict tort liability depends in this state on the scope of the Uniform Commercial Code. *Id. Accord Cline v. Prowler Industries of Maryland, Inc.,* 418 A.2d at 971. In *Martin,* it was held that since leases and bailments were not within the purview of Article Two of the U.C.C., which is limited to sales transactions, the General Assembly did not preempt the field as to bailment-leases and the Court was free, in the common law tradition, to recognize an action for strict tort liability. 353 A.2d at 584. Plaintiffs argue that their warranty claims are beyond the scope of the U.C.C. and, therefore, this Court is free, in the common law tradition, to apply the doctrine of strict tort liability.

In reply, defendant frames the issue differently. Defendant argues that the U.C.C. applies to plaintiffs' product liability action not because the U.C.C. may or may not govern plaintiffs' particular warranty claims but because the case involves a sales transaction. Since it cannot be controverted that the plaintiffs' case involves a sales transaction, the defendant concludes that legislative preemption of the field precludes

the recognition of strict tort liability in this case.

In support of their position, defendant cites decisions in which courts declined to recognize strict tort liability even though the plaintiffs' warranty claims were governed by the laws of another jurisdiction. *Handy v. Uniroyal, Inc.,* 327 F.Supp. 596, 599 (D.Del.1971); *Baynard v. American Motors Corp.,* 974 C.A.1974, slip op. at 8 (Del. Super. May 30, 1979). In both cases, the courts simply held that actions in strict tort liability were not valid in Delaware. Neither court, however, discussed the question of whether sales transactions governed by the laws of another jurisdiction pursuant to Delaware conflict of law rules preclude a cause of action in strict tort liability under Delaware tort law.

In cases decided after *Cline,* Delaware state and federal decisions have unanimously declined to recognize a cause of action in strict tort liability in cases involving sales transactions. It has been determined that the absence of a remedy under Article Two does not indicate that the plaintiffs' cause of action falls beyond the scope of the U.C.C. *See Comegys v. Dorsey,* No. 77C–SE–23, slip op. at 1–2 (Del.Super. Oct. 15, 1981); *Glazer v. General Electric Co.,* No. 77–448, slip op. at 2–3 (D.Del. Jan. 29, 1982). As this Court stated in *Glazer:*

> Plaintiffs' argument that the U.C.C. provides them with no recovery misses the point. The legislature could have enacted a version of section 2–318 which gave them a cause of action. It chose not to do so. If this Court were to apply the doctrine of strict tort liability to every sales case in which the U.C.C. provided no remedy, it would in effect be repealing the limitations carefully drafted into that statute.

*Id.* at 3.

In other cases, it has been held that strict tort liability will not be recognized where the sales transaction at issue took place prior to the adoption of the U.C.C. *Demuth v. Dresser Industries, Inc.,* No. 80C–JA–83, slip op. at 2 (Del.Super. Aug. 18, 1981);

*Franchetti v. Intercole Automation, Inc.,* 523 F.Supp. at 458. In *Franchetti*, this Court examined the development of products liability law in Delaware and found that the Delaware Supreme Court had consistently held that the adoption of strict tort liability in product liability cases including sales transactions could only be performed by the General Assembly. *Id.* at 456, 457. *See Ciociola v. Delaware Coca-Cola Bottling Co.,* 172 A.2d 252, 257 (Del. 1961); *Cline v. Prowler Industries of Maryland, Inc.,* 418 A.2d at 976. The Court concluded that the recognition of strict tort liability in pre-Code cases "would be inconsistent with the legislature's enactment and in the Court's opinion would not be sanctioned by the Delaware Supreme Court." *Franchetti,* 523 F.Supp. at 458.

Admittedly, these post-*Cline* decisions can be distinguished. In the instant case, the U.C.C. does not apply to the plaintiffs' claim due to the operation of conflict of law principles and not because of any substantive provisions of the Code. Since the plaintiffs' warranty claims are subject to the law of Ontario, it cannot be said that in enacting the U.C.C. the General Assembly chose not to afford them a remedy. Moreover, unlike *Franchetti,* the recognition of strict tort liability in this case would not create a competing remedy in product liability cases involving sales transactions. A litigant in the plaintiffs' position would be unable to seek relief under competing theories of liability because Delaware law would not govern his contractual claims. Thus, recognition of the plaintiffs' strict tort liability claims would not necessarily undermine the holdings in *Cline, Franchetti,* or *Glazer.*

The Court, however, is by no means certain that the Delaware Supreme Court would adopt plaintiffs' theory. The more probable conclusion is that the Delaware Supreme Court would find that strict tort liability is precluded in any case involving a sales transaction whether or not a plaintiff's contractual claims are governed by Delaware law. This result is consistent with cases decided before *Cline. See Handy v. Uniroyal, Inc.,* 327 F.Supp. at 599;

*Baynard v. American Motors Corp.,* 974 C.A. No. 1974, slip op. at 8.

Plaintiffs argue that they should be able to pursue a claim in strict tort liability in order to avoid the onerous effect of the operation of the Delaware conflict of law rules which prevent them from pursuing more favorable theories of liability under Delaware contract law and Ontario tort law. Plaintiffs reason that this result frustrates the intent of the legislature of Delaware to afford persons pursuing products liability claims the benefit of the U.C.C., *see* 6 *Del.C.* § 2–318, and the public policy embodied in the tort law of Ontario to afford plaintiffs the benefits of a cause of action similar to strict tort liability. *See Report on Products Liability* at 18, 31. This argument is superficially appealing but cannot withstand closer scrutiny.

The matter sub judice is not the type of situation where the recognition of a new cause of action would further the development of the common law as was the case in *Martin v. Ryder Truck Rental, Inc.,* 353 A.2d at 584–589. As the Court stated in *Franchetti v. Intercole Automation, Inc.:*

> In *Martin* the Delaware Supreme Court acted to fill what it perceived as a gap in the law—the U.C.C. provided no remedy for the bailment lease situation.

523 F.Supp. at 457–58. In the present case, there is no gap in the law of products liability with respect to sales transactions. Recognition of the plaintiffs' strict tort liability cause of action would admittedly help the plaintiffs but would do little if anything to further the development of Delaware state law. Few people would be able to avail themselves of such a development.

Moreover, if the plaintiffs were allowed to pursue a claim for strict tort liability, they would be afforded greater substantive rights than Delaware residents placed in a similar situation. Under Delaware law, in a product liability case involving a sales transaction, if the statute of limitations of 6 *Del.C.* § 2–725(2) expires, then a plaintiff can only proceed on a theory of negligence. This is the very situation in which plaintiffs

**1104**

find themselves. It is highly unlikely that the highest Delaware state court would recognize a cause of action previously held unavailable where to do so would treat nonresidents more favorably than residents of the State.

The unique facts of this case do not warrant the recognition of plaintiffs' strict tort liability claim. Recent cases indicate that claims based upon strict tort liability would not be recognized in any case involving a sales transaction. Moreover, I am not persuaded the Delaware Supreme Court would recognize plaintiffs' cause of action grounded on strict tort liability.

*Conclusion*

For the reasons stated herein, the defendant's motion for partial summary judgment on Counts II and IV of the complaint will be granted.

An appropriate order will issue.