**NORTON BUICK COMPANY, Inc., a Corporation, Plaintiff in Error,**

v.

**E. W. TUNE COMPANY, Inc., a Corporation, Defendant in Error.**

**No. 37973.**

Supreme Court of Oklahoma.

March 22, 1960.

As Amended April 18, 1960.

Rehearing Denied April 19, 1960.

Charles E. Dierker, Tom S. Williams, Oklahoma City, for plaintiff in error.

Washington, Thompson, Wheeler & Camp, Oklahoma City, for defendant in error.

PER CURIAM.

The plaintiff alleged in its petition, in part, that on or about the 13th day of July, 1954, plaintiff and the defendant entered into an oral contract whereby the plaintiff agreed to buy, and the defendant agreed to sell a 1954 model Buick two-door Super Riviera automobile for $4,550. The plaintiff made a down payment of $2,250 to the defendant, and the balance to be paid in 23 monthly installments of $133.24 per month, and the automobile was delivered to the plaintiff. That the defendant impliedly warranted to the plaintiff that the said automobile was sound and made in good workmanlike manner, and in good working order, and free from defective materials, and would give good service under ordinary usage and care. That there was a breach of said warranty in that there were defective materials in said automobile and it was not in good working order; that the defendant has made repeated attempts to repair said automobile, but has been unable to do so.

The plaintiff surrendered said car to the defendant and demanded of the defendant the return of the consideration paid to date, to-wit, $2,649.72, but the defendant has refused to return said consideration.

The answer of the defendant was a general denial and further alleged that the said Mrs. E. W. Tune and S. T. Tune made two of the payments provided for in said Conditional Sales Contract, to-wit, the payment due August 25, 1954, and the payment due September 25, 1954, making a total of said payments in the sum of $266.48; that there was due, therefore, to this defendant

on the 25th day of October 1954, the sum of $2,931.28; that on or about the 20th day of October, 1954 said car was left in the possession of the defendant by the said Mrs. E. W. Tune and S. T. Tune; that subsequently the payments becoming delinquent under the said Conditional Sales Contract, the said automobile was advertised for sale as provided by law, and upon public sale the said automobile was bid in by the defendant.

The defendant amended its answer after the evidence was introduced, to-wit: Further answering and for a further defense herein, defendant alleges and states that the car in question was sold by defendant upon an express warranty in writing, whereby defendant agreed, in lieu of all other warranties, to replace and repair any defective parts in said automobile, until said automobile had been driven 4,000 miles, or until it has been used 90 days, whichever was earlier. That defendant, upon the request of plaintiff, made certain repairs and replaced certain parts upon said automobile, and fully complied with said warranty. Said warranty consists of a Manufacturer's Standard Warranty and a Dealer's Standard Warranty, both of which have been offered in evidence in this case and are made a part of this answer by reference.

The jury returned a verdict for the plaintiff for $2,019.72 and judgment was entered accordingly.

S. T. Tune testified on behalf of plaintiff that he is an officer of E. W. Tune Company, Incorporated, engaged in confection manufacturing. He made a trade with defendant for an automobile, trading in a company Pontiac. The new car was delivered on July 15th.

The emergency brake came loose from the frame, molding started coming loose from the windows, there was a hole in the upholstery. The third week a screw came loose in the oil pump and caused trouble. The rear end was noisy and defendant replaced it four weeks after the purchase. The parking gear caused trouble. The car failed to start properly. Six or seven weeks after the purchase the car started using a quart of oil each 400 miles. Trouble developed in the booster pump on the Dynaflow and witness took the car to defendant's place of business and left it there.

Witness discussed replacement of the car and was unable to reach an agreement as to terms.

Jack Taylor testified on behalf of defendant that he is service manager for defendant. That the following service was performed on the car:

1,000 and 2,000 miles inspections;

Corrected emergency brakes;

Aligned front end and balanced front wheels;

Restitched weather-stripping at botton of rear door;

Crossed and balanced the tires;

At 5,029 miles, installed new ring gear and pinion and set of bearings;

Checked wiring, cleaned out gas lines and screens, and carburetor filter, and checked the fuel pump and choke valves;

At 6,635 miles, repaired parking pawl, checked fuel pump valves and carburetor;

At 6,700 miles replaced differential which had a slight and normal hum, replaced dynaflow, repaired carpet and trim on a panel.

At that time witness discussed the warranty with Mr. Tune. Mr. Tune understood it was good only for 90 days or 4,000 miles, whichever occurred first, but witness told him they would extend it to 12,000 miles or 12 months, whichever came first, on the basis of the trouble he had had.

Mr. Tune never requested that anything be done on the car that was not done.

The defendant in its brief contends that there was no breach of an implied warranty entitling plaintiff to rescind. The Manufacturer's Warranty is as follows:

"It is expressly agreed that there are no warranties expressed or implied,

made by either the Dealer or the Manufacturer on the Buick motor vehicles, chassis or parts furnished hereunder, except the Manufacturer's Warranty against defective materials or workmanship as follows:

"The Manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires) supplied by the Manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective, this warranty being expressly in lieu of all other warranties, expressed or implied, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.

"This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an authorized Buick Service Station in any way so as in the judgment of the Manufacturer to affect its stability and reliability, nor which has been subject to misuse, negligence or accident.

"The Manufacturer has reserved the right to make changes in design or add any improvements on motor vehicles and chassis at any time without incurring any obligation to install same on motor vehicles and chassis previously purchased."

The dealer's warranty is as follows:

"Parts supplied under the Manufacturer's Warranty will be installed by any authorized Buick Dealer in the United States or Canada without charge for labor."

The plaintiff's theory of the case is that there was no written warranty by the manufacturer or by the dealer, and therefore the implied warranty was applicable, and he cites G.M.C. Truck Co. v. Kelley, 105 Okl. 84, 231 P. 882, wherein we held in the second syllabus:

"In the absence of contract which negatives the same, there is an implied warranty in the sale of a motor truck that it is suitable to perform the ordinary work for which it was made."

And also cites many other cases in support of this contention.

The plaintiff, on cross-examination, testified in part:

"Q. (By Mr. Dierker) Now at the time that you bought this car, Mr. Witness, you were furnished with a Buick Owner Service Policy, were you not?

A. I guess I was.

(Whereupon a certain instrument was identified in the record as Defendant's Exhibit 'D.')

(Whereupon a certain instrument was identified in the record as Defendant's Exhibit 'E.')

"Q. (By Mr. Dierker) Now, Mr. Witness, referring to Defendant's Exhibit 'E' I will ask you to state if you got that sort of a document when you bought the car? A. I believe I did. It was probably in the glove compartment.

"Q. All right. Now you turned in these two credit slips 'B' and 'C' for the 1,000 and 2,000 mile service credit, did you not? A. Yes, I did.

"Q. All right. And they were taken off of this thing here, Buick Owner Service Policy, were they not? A. Yes sir.

"Q. All right. Now in the Buick Service Policy reference is made in paragraph 3—and I'll ask you if you read this—'Installation of Parts Furnished under Warranty; Parts supplied under the Manufacturer's Warranty will be installed by any Author-

ized Buick Dealer in the United States or Canada without charge for labor. The Manufacturer's Warranty is set forth at length in the Owner's Guide.' Did you read that paragraph? A. Yes, sir.

"Q. Now did you refer to the Buick Owner's Guide to see what that warranty was? A. I don't know whether I did or not.

"Q. You wouldn't say that you did nor that you didn't? A. That's right.

"Q. I'll ask you to state whether you read this language: 'The manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires). supplied by the Manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part of parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, express or implied, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.' Now will you say that you read that or that you did not read it? A. I read part of it.

"Q. Well, what part of it did you read? A. The 4,000 miles and 90 days.

"Q. Then you understood that the warranty expired after the car had been driven 4,000 miles, did you not? A. Yes, I did.

"Q. And the Sales Manager, I assume, Mr. Taylor here, do you know him? A. Yes, I do.

"Q. He told you that even though the warranty had expired, he wanted you satisfied? A. Yes, he did.

"Q. And they would continue to take care of the car even though the warranty had expired, did he not? A. Yes, he did."

From an examination of the entire record we find and hold that the evidence is not sufficient to apply the implied warranty. See Bauman v. International Harvester Co., 191 Okl. 392, 130 P.2d 287, and Volz v. Clark, Okl., 303 P.2d 441.

The judgment appealed from is reversed and the cause is remanded to the trial court with directions to the trial court to render judgment for the defendant.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.