**Joseph P. DILLON, Plaintiff,**

**v.**

**GENERAL MOTORS CORPORATION, a Delaware Corporation, and Union Park Pontiac, Inc., a Delaware corporation, Defendants.**

Superior Court of Delaware,
New Castle.

Jan. 2, 1974.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

Joseph H. Flanzer, of Flanzer & Isaacs, Wilmington, for defendant, General Motors.

Charles K. Keil, and Richard K. Herrmann, of Bayard, Brill & Handelman, Wilmington, for defendant, Union Park Pontiac, Inc.

## OPINION

McNEILLY, Judge.

This is an action by the Plaintiff, Joseph P. Dillon, against Defendants, General Motors Corporation and Union Park Pontiac, Inc., to recover damages resulting from an automobile accident alleged to ·have been caused by a defective steering mechanism on Plaintiff's new 1967 GM automobile. The automobile in question had been purchased on April 12, 1967 from Defendant, Union Park, and on April 16, 1967 Plaintiff claims that while driving the· vehicle in New Hyde Park, Long Island, New York, the steering mechanism collapsed, causing him to lose control of the vehicle and collide with two parked automobiles which resulted in property damage and personal injuries.

Plaintiff's action is based on a breach of implied warranty of fitness for the general purpose for which the automobile was manufactured and sold, and also on the basis of negligence, relying on the doctrine of Res Ipsa Loquitur.

The Defendants have filed separate motions for summary judgment. GM's motion at this time is directed to the issue of the propriety of an implied warranty in this case, and also to the theory of estoppel in that the contributory negligence of Plaintiff, already established, as a result of a suit by one of the injured parties in New York, bars this present claim.

Union Park relies on the theory that a breach of implied warranty does not apply; that the doctrine of .Res Ipsa Loquitur does not apply; that Plaintiff is estopped by reason of his contributory negligence in

New York, and, in addition, that there is no factual basis to support the Plaintiff's allegation of negligence.

Since both the sale of the automobile to the Plaintiff and the accident occurred prior to June 30, 1967, this case is not governed by the Uniform Commercial Code, 5A Del.C. § 10–101. Hence, the appropriate legislation applicable to this case is the Uniform Sales Act embodied in 6 Del.C. § 701 et seq. which provides as follows:

Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except—

(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose;

(2) Where the goods are bought by description from a seller who deals in goods for that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality;

(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed;

(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name there is no implied warranty as to its fitness for any particular purpose;

(5) An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade;

(6) An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith.

■ It has long been established in Delaware as well as in the majority of jurisdictions that the parties to a contract may agree to expressly avoid any obligations of implied warranty. Traylor Engineering & Mfg. Co. v. National Container Corp., 6 Terry 143, 70 A.2d 9 (Del.Super.1949); Runco v. Brockway Motor Co., 164 Pa.Super. 240, 63 A.2d 397 (1949); Davies v. Motor Radio Co., 236 S.W.2d 409 (Mo.Ct. of App. 1951); Norton Buick Co. v. E. W. Tuna Co., 351 P.2d 731 (Okl.1960); Mattson v. General Motors Corp., 9 Mich.App. 473, 157 N.W.2d 486 (Ct. of App.1968). This right of contractual freedom has been expressly approved by the drafters of the Uniform Sales Act, for 6 Del.C. § 771 provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

Defendants rely upon the express warranty which accompanied the vehicle at the time of sale and which purported to limit liability to repair and replacement, and provided it was in lieu of all other warranties, express or implied.

■ The right to exclude implied warranty has been upheld in numerous automobile cases where the accompanying express warranty which provided for repair and replacement was similar or the same as in this case, but in each instance cited by the Plaintiff the Courts relied upon a contractual privity. This Court knows of no public policy that would prevent the parties from contracting so as to limit their liability to the express warranty furnished by the manufacturer. As previously stated, the law in this State is clear, but unless it can be shown that the parties did,

in fact, contract to such a limitation rather than merely accepting the manufacturer's express warranty as a statement of the manufacturer's policy, that policy cannot be accepted by this Court as a contract.

As stated by Frueman and Friedman on Products Liability:

"If privity must be regarded as essential to the maintenance of a warranty action, there seems to be no good reason why it should not be said today that a manufacturer is in privity, albeit not in a contractual sense, with the consumers and users of his product. All of his productive efforts are directed not at middlemen, but at the public who in the last analysis uses his product and determines whether he is to stay in business".

" . . . It has been held that a disclaimer or limitation of liability in a contract for the sale of a motor vehicle, consisting of a provision in the manufacturer's warranty that its obligation is limited to the replacement of defective parts and that such a remedy is 'in lieu of all other warranties, express or implied, and all other obligations or liabilities on its part', does not preclude recovery against the manufacturer by the purchaser, as for breach of an implied warranty of fitness, for personal injuries due to a defect in the vehicle". 8 Am.Jur.2d, Automobiles, § 647.

The principles applicable are set forth in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 1960 (75 A.L.R.2d, p. 1, et seq. annotated). On a factual basis, the *Henningsen* case is directly in point.

The parties place heavy reliance on Ciociola v. Delaware Coca Cola Bottling Co., 3 Storey 477, 172 A.2d 252 (1961). In that case the Delaware Supreme Court held that liability of a manufacturer for breach of an implied warranty of fitness of manufactured goods extended only to persons in privity with the manufacturer. The Court based its ruling on the conclusion of fact that a filled Coca Cola bottle was not an inherently dangerous object. This remained as the controlling law of Delaware prior to the passage·of the UCC but does not control the decision in this case since this falls within the "inherently dangerous object" exception.

In Gorman v. Murphy Diesel Co., 3 Terry 149, 29 A.2d 145, the Superior Court stated the rule as follows:

"The general rule, as stated in the cited case, is that a contractor, manufacturer or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of the articles he handles. What is called the third exception to the rule is stated to be that one who sells or delivers an article which he knows to be imminently dangerous to life or limb of another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractual relations between the parties or not. The exception, entitled perhaps to stand as a rule in itself, "is based on the broad ground that the manufacturer of an article, though not inherently dangerous but which may become so when put to its intended use, owes a duty to the public to employ reasonable care, skill and diligence in its manufacture. If a machine negligently constructed is reasonably certain to imperil life or limb, it is a thing of danger; and where the manufacturer knows that the machine will be used, and without new tests, by persons other than the purchaser, a duty is imposed on him to use due care in its construction. As in negligence generally, liability is based on a reasonable foreseeability of danger; and knowledge of probable, not possible, danger is an essential element of the liability. Mac Pherson v. Buick Motor Car Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, Ann.Cas.1916C, 440".

But the most significant language directly applicable to our factual situation states:

"An internal combustion engine, in and of itself, is not a thing of danger. It is an inert mass of metal. When put to its intended use it is imminently dangerous if negligently constructed. The manufacturer, in a proper case, ought to be answerable for want of care and skill in its construction, even though the injured person had no contractual relations with him".

■ The same principle was recently enumerated by this Court in Moore v. Douglas Aircraft Co., Inc., Del., 282 A.2d 625. The privity argument is thus effectively destroyed as to GM.

". . . However, a well recognized exception to the privity requirement exists where the product is one 'known to the seller to be imminently dangerous to life and limb or likely to become so when put to its intended use if constructed defectively.' Kates v. Pepsi Cola Bottling Co., supra, at 311, citing Gorman v. Murphy Diesel Co., supra, Hartford Accident and Indemnity Co. v. Anchor Hocking Glass Corp., 5 Terry 39, 55 A.2d 148 (Del.Super.Ct.1947), and Behringer v. William Gretz Brewing Co., 3 Storey 365, 169 A.2d 249 (Del.Super.Ct.1961). The question is whether the apparatus in question was imminently or inherently dangerous if negligently constructed." 282 A.2d 628.

In Gentry v. Wilmington Trust Company, Civil Action 3605 (D.Del.), a products liability suit for damages resulting from an allegedly defective scaffold, Chief Judge Wright, Delaware Federal District Court, charged the Jury as follows:

"Plaintiffs also assert that Werner is liable for their injuries on account of its sale of a defective scaffold plank that was unreasonably dangerous for use.

"It is the law that manufacturer who designs and sells a product that is expected to and does reach the consumer without substantial change in the condition in which it is sold, is liable for injuries proximately caused by defects in the design of the product which renders it unreasonably dangerous and unsafe for its intended use, even though the manufacturer has exercise all possible care in preparation and sale of the product.

"A product is defective in design if it is not reasonably fit for its intended use.

A product is unreasonably dangerous if the manufacturer can or should reasonably foresee the probability of an injury from the intended us of the product".

In Jackson v. Hearn Brothers, Inc., Del. Supr.1965, 212 A.2d 726, the Delaware Supreme Court dismissed a "strict liability" count with the following comment:

"Assuming, without deciding that this Court would apply the rule of strict liability in a proper case, we think that its application in this case is unjustified". 212 A.2d at p. 727.

■ Defendants' claim that Plaintiff is estopped from proceeding in negligence in that his contributory negligence has been previously established by reason of the claim of the owners of one of the vehicles with which Plaintiff collided was reduced to judgment against Plaintiff. The judgment in question went by default with no determination on the merits. There were different parties to that suit, different issues and no judicial determination on the merits, and, therefore, the doctrine of res judicata collateral estoppel is inapplicable.

■ There is no evidence in the record to indicate that the Plaintiff in this action had any notice or any cause to discover the danger of the alleged faulty steering mechanism. Since Plaintiff's negligence consisted of a mere failure to discover the dangers in the product contributory negligence is no defense to either an action based on warranty or an action based on negligence. (See Prosser, "Fall of the Citadel" 50 Minn.L.R. 791, 32 A.T.L. J1 (1968)).

Defendant, Union Park, urges that Res Ipsa Loquitur is not applicable to it because it only sold the car and did not design, manufacture or install the mechanism. What Union Park did to the car, however, in servicing it in order to make it saleable is known only to Union Park.

The doctrine of Res Ipsa Loquitur has been followed consistently by Delaware Courts and the rule as set forth in Delaware Coach Co. v. Reynolds, 6 Terry 226, 71 A.2d 69, is that if the facts of the case warrant an inference of negligence of such force as to call for an explanation or rebuttal from the defendant an issue for submission to the Jury has been created. In this case it is clear that the responsibility for the latent defect that existed in the automobile must fall somewhere between Union Park and GM.

As stated in Phillips v. Delaware Power & Light Co., Del.Super., 202 A.2d 131:

"To be entitled to the use of res ipsa loquitur plaintiffs must show that the accident occurred under such circumstances that in the ordinary course of events the accident would not have occurred if the Power Company had observed proper care. See Delaware Coach Co. v. Reynolds, supra; Stevenson, Law of Negligence in the Atlantic States, p. 1400. This record indicates a rational basis for determining that the accident was probably one that would not have occurred in the normal course of events without some negligence on the part of the 'Power Company.' This does not mean that in order to be entitled to the use of res ipsa loguitur, the possibility of other causes must be altogether eliminated but only that their likelihood must be so reduced that the greater probability of negligence lies at the Power Company's door. See Schafer v. Wells, 171 Ohio St. 506, 172 N.E.2d 708, 712; 2 Harper and James, Law of Torts, p. 1085".

Although it cannot be disputed that Defendant, Union Park, neither designed, manufactured nor installed the steering mechanism of the automobile in question it is obvious that the accident in question would not have occurred in the normal course of events without some negligence on the part of either Union Park or GM.

The Plaintiff has been deposed and described the accident as being caused by the defective steering mechanism, and, in addition, GM's own investigator in his deposition stated that the steering column was damaged and would have to be replaced. These facts, together with the brief time lapse between purchase and accident, and the lack of any evidence of Plaintiff's knowledge of the defect, are sufficient to support Plaintiff's allegation of negligence and the application of the doctrine of Res Ipsa Loquitur.

For the reasons stated the motions for summary judgment herein involved must be denied, and it is so ordered.