**PACK & PROCESS, INC., a Delaware Corporation, Plaintiff,**

**v.**

**The CELOTEX CORPORATION, a Delaware Corporation, Defendant.**

Superior Court of Delaware,
New Castle County.
Submitted: Sept. 20, 1984.
Decided: Oct. 16, 1985.

Jeffrey M. Weiner, of Bayard, Handelman & Murdoch, P.A., Wilmington, for plaintiff.

Robert Burton Coonin, of Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for defendant.

MARTIN, Judge.

This motion for summary judgment is brought by the Celotex Corporation ("defendant") against Pack & Process, Inc. ("plaintiff") seeking dismissal of plaintiff's action for money damages against defendant alleging false representation, consumer fraud, negligence and breach of express and implied warranties in connection with the installation of a roof manufactured by the defendant and installed on a warehouse later owned by the plaintiff. In the event that summary judgment is not granted as to any portion of the complaint, the defendant also moves to strike references in the complaint to pending lawsuits against the defendant.

A roof manufactured by the defendant was installed sometime in June 1971 on a warehouse originally constructed for W.I. Park at 1001 East 7th Street in Wilmington. On September 3, 1971, upon completion of the installation of the roof, the defendant issued a 20-year bond, in a sum not to exceed $2,900, to W.I. Park to repair, or cause to be repaired, leaks in the roof caused by ordinary wear and tear. The defendant was also obligated under the bond to inspect the roof in the event that at any time during the 20-year period the roof was in need of repairs.

The plaintiff purchased the warehouse on Seventh Street from W.I. Park on May 10, 1976. At no time prior to contracting to purchase the building did the plaintiff have any contact with representatives of the defendant, nor did the defendant make any representations to the plaintiff concerning the roof. W.I. Park did, however, inform the plaintiff that the warehouse was a four-year-old building with a roof manufactured and bonded by the defendant. The plaintiff was not informed and did not inquire about the condition or history of the roof. Prior to plaintiff's purchase of the warehouse two repairs had been made to the roof; one in 1972 costing $742.00 to repair a "fishmouth" problem caused by faulty materials, and one in 1974 costing $420.62 to repair a leak caused by the same "fishmouth" problem experienced in 1972. At that time the defendant assured W.I. Park that the necessary repairs to the roof had been made under the terms of the bond and that the roof was in a "watertight" condition.

After plaintiff's purchase of the warehouse in 1976, additional repairs were needed. Leaks reappeared in the roof in March of 1978 and repairs costing $784.00 were authorized by the defendant under the terms of the bond. Further repairs due to leaks were made in March 1980 and June 1980, which cost $1500.00 and $920.00 respectively. The defendant assured the plaintiff that the repairs would "absolutely solve" the problems and that the defendant would "stand behind" the work being done.

In November of 1980 the plaintiff made another request for repairs, but was informed in December 1980 that the bond had been exhausted by previous repairs thereby terminating any obligation on the

defendant's part to make further repairs or inspections. In January 1981, the defendant, however, offered to provide technical assistance to determine the problems with the roof. On August 10, 1981 the defendant advised the plaintiff that the principal problem with the roof was the failure of the insulation under the roofing membrane to be adequately supported—a cause specifically excluded under the terms of the bond as attributed to improper workmanship during installation and not the failure of the materials provided by the defendant.

On April 29, 1982, plaintiff instituted this action against the defendant.

The defendant offers several grounds for dismissal of the fraud, negligence and warranty claims brought by the plaintiff. Several arguments raise the statute of limitations as a bar to plaintiff's statutory fraud, negligence and warranty claims. The remainder of the arguments dispute the substantive applicability of the common law and statutory fraud actions and the express and implied warranty actions. The Court will address the issues relating to the statute of limitations defenses first.

## SCOPE OF REVIEW

On a motion for summary judgment, the Court must examine the record in the light most favorable to the non-moving party. *Sweetman v. Strescon Ind., Inc.*, Del.Super., 389 A.2d 1319 (1978). The moving party bears the heavy burden of proof of showing that there is no material issue of fact and that he is entitled to judgment as a matter of law. *Moore v. Sizemore*, Del. Supr., 405 A.2d 679 (1979). A party is not entitled to summary judgment as a matter of right. *Cross v. Hair*, Del.Supr., 258 A.2d 277 (1969). If there is a reasonable indication that a material fact is in dispute, or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law, summary judg-

ment will not be granted. *Ebersole v. Lowengrub*, Del.Supr., 180 A.2d 467, 470 (1962).

## NEGLIGENCE AND STATUTORY FRAUD CLAIMS

In Count I the plaintiff asserts a claim of false representation in violation of the common law and 6 *Del.C.* § 2513.[1] The plaintiff claims that the defendant knew or should have known that the roofing materials used on the warehouse purchased by plaintiff were inherently defective. The plaintiff contends that in spite of this knowledge the defendant fraudulently concealed from and/or made false representations to the owners of the warehouse in regard to the defective nature of the roof. As a result, the plaintiff claims he suffered damage to the products stored in the warehouse, loss of use of portions of the warehouse, the costs of repairs to the roof, and further damage in that the roof must now be completely replaced.

In Count IV the plaintiff alleges that the defendant was negligent in several particulars thereby causing damage to the plaintiff in the same manner spelled out in Count I. Plaintiff claims that the defendant was negligent in the following manner:

(a) Defendant failed to furnish adequate and proper roofing materials to be utilized for the installation of the warehouse roof;

(b) Defendant failed to warn of the inadequate and improper roofing materials when Celotex knew or should have known of the inherent deficiency thereof;

(c) Defendant failed to test properly the characteristics of the roofing materials installed upon the warehouse roof; and

(d) Defendant failed to discover, if it did test, the inadequacy and impropriety of the roofing materials.

*Griffith v. Thawley*, Del.Super., C.A. No. 81C–MR–9, Christie, J. (April 20, 1983); *Galasso Import Co. v. Porter*, Del.Super., C.A. No. 79A–JA–19, Stiftel, J. (April 23, 1980), *Sexton v. J.C. Penny Co., Inc.*, Del.Super., C.A. No. 77C–DE–74, Walsh, J. (November 15, 1978).

---

1. Plaintiff admitted in their answering brief that they had no standing under the Uniform Deceptive Trade Practices Act, 6 *Del.C.* § 2531 et seq., which is limited to actions between competitors and, therefore, has withdrawn this claim. See, *Young v. Joyce*, Del.Supr., 351 A.2d 857 (1975),

*Statute of Limitations Defense*

The issue presented by defendant's motion for summary judgment on the ground that the statute of limitations period has lapsed on the statutory fraud and negligence claims is whether the accrual of plaintiff's cause of action is governed by the time of discovery rule. If not, these claims were not timely filed under the applicable statute of limitations and are barred.[2]

Plaintiff's statutory fraud and negligence claims are subject to 10 *Del. C.* § 8106 which requires that the plaintiff bring an action to recover damages within three years of "the accruing of the cause of action." In *Pioneer Nat. Title Ins. Co. v. Sabo,* Del.Super., 382 A.2d 265 (1978), a case involving legal malpractice, the Court noted that "ordinarily this phrase is construed to refer to the date of occurrence." *Id.* at 266. The Court pointed out, however, that under the authority of *Layton v. Allen,* Del.Supr., 246 A.2d 794 (1968), that same phrase has been "construed to mean the date of discovery" where "the injury was inherently unknowable and the injured party had relied upon the professional expertise of the wrongdoer and was blamelessly ignorant." *Id.* When these "factual requisites" are met, "the limitations period commence[s] to run when the person ha[s] reason to know that a wrong ha[s] been committed." *Id.* at 266–267.

This time of discovery principle had previously been applied in Delaware to professional tort litigation and recently extended to non-professional tort cases as well. In *Rudginski v. Pullella,* Del.Super., 378 A.2d 646 (1977), the Court, relying upon the Supreme Court's decisions in *Layton v. Allen, supra,* and *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130 (1974), in which the time of discovery rule was applied to professional malpractice, extended the rule to a case involving the alleged negligence of a plumber. In the opinion of the Court, there

was "no reasonable distinction between the cases involving the hidden malpractice of doctors, accountants and lawyers and the hidden errors of a plumber." *Id.,* at 649.

The policy consideration articulated in these cases supports the application of the time of discovery rule in the instant case. In general, the purpose underlying statutes of limitations is one of fairness to the defendant; that the defendant may be secure in his expectation that he will not be called upon to defend against stale claims. *Id.* Nevertheless, in *Rudginski,* the Court observed that fairness to the defendant is not to be exalted in every instance over fairness to the plaintiff.

> "Yet, in the application of the statute in a given set of circumstances, it should not be made to produce a result which the legislature as men and women of reason could never had intended. (cites omitted). Thus, the question becomes one of balancing the difficulty of proof which may increase with the passing of time against the hardship to a plaintiff who neither knows nor has reason to have known of the existence of his right to sue." *Id.*

Although the injury to plaintiff's roof was not "inherently unknowable" in the sense that the defect was hidden underground, as was the defective septic system in *Rudginski,* or in such a manner that the harmful effect only gradually manifested itself over time, as in *Isaacson,* whether or not there was an inherent defect in plaintiff's roof was a determination contractually entrusted to the defendant. Under the terms of the bond, the defendant was to inspect and repair the roof for damage caused by ordinary wear and tear. In representing to the plaintiff that the repairs were being made under the bond, the defendant implicitly concealed from the plaintiff that there may have been latent defects in the roofing material which might have alerted the plaintiff to the existence of a legal claim. Indeed, the undisputed allega-

---

**2.** The issue of fraudulent concealment as a basis for tolling the statute of limitations will not be addressed in light of the opinion of the Court that the time of discovery rule applies.

tion is that the defendant assured the plaintiff and the plaintiff's predecessor that the problems with the roof were caused by ordinary wear and tear and guaranteed that the problems were solved by the repairs. The nature of the contractual relationship between the parties was such that the existence of roof defects and the cause of the leaks was the responsibility of the defendant, and, as such, not a condition about which plaintiff should have been knowledgeable.

Likewise, although the plaintiff certainly was not "ignorant" of the existence of problems with the roof, the plaintiff had no reason to know that the repairs being made were not due to ordinary wear and tear and was, thus, "blamelessly ignorant." The bond specifically provided for an inspection service to wit: the defendant was to determine the cause and responsibility for repairs. In purchasing the bond, the plaintiff paid for this service. The plaintiff not only relied upon the defendant's expertise and assurances concerning the cause of repairs, but also relied upon the defendant to act in good faith. The plaintiff could discover any failure by the defendant to perform in a commercially competent manner at the time of the inspections and repairs only by hiring an independent roofing specialist to undertake to make the same inspections. See, *Pioneer Nat. Title Ins. Co. v. Sabo,* 432 F.Supp. 76, 81 (D.Del.1977). The defendant's interest in repose is not justification for requiring the plaintiff, in justifiable reliance upon a contractual obligation and guaranty, to hire an independent service to perform the same work in order to insure "that any cause of action arising from that work will not be time-barred." *Id.* [3]

The set of circumstances presented by this case warrants application of the time of discovery rule to the determination of the accrual of plaintiff's causes of action for negligence and statutory fraud. Under the time of discovery rule, the limitations period does not begin to run until the plaintiff has reason to know that a wrong has been committed. In this case, it was not until August 10, 1981, when the defendant for the first time informed the plaintiff that the problems with the roof were not caused by ordinary wear and tear, that the plaintiff had reason to know the existence of a legal claim. The plaintiff, having instituted this action on April 29, 1982, has timely filed under the three-year statute of limitations of 10 *Del.C.* § 8106.

Defendant's motion for summary judgment on Counts I and IV of plaintiff's complaint on the ground that these claims are barred by the statute of limitations is, accordingly, denied.

## BREACH OF EXPRESS AND IMPLIED WARRANTY

In Count II the plaintiff asserts that the defendant expressly warranted by its statements and affirmations relating to the quality of its two-ply roofing system that the roof would be comparable in quality in terms of usable life in a manner similar to that offered by a traditional four-ply roof system thereby inducing the purchase of the roof by plaintiff's predecessor. Further, plaintiff alleges that the defendant breached its express warranty in that, beginning shortly after the installation of the roof and continuing to the present, the roof leaked thereby permitting water to enter plaintiff's warehouse and causing damage in the same manner alleged in Counts I and IV.

**3.** The circumstances in *Lembert v. Gilmore,* Del. Super., 312 A.2d 335 (1973) and *City of Newark v. Edward H. Richardson Assoc.,* Del.Super., 375 A.2d 475 (1977) are distinguishable. In *Lembert,* because the surveyor's stakes were in plain view the Court concluded that the statute of limitations, in an action seeking damages from the surveyors for an inaccurate survey, began to run at the time the stakes were placed

in the ground. The Court noted, however, that there was "no contention that the existence of the stakes, their location or information relating to the property lines was concealed from the plaintiffs." *Id.,* at 337. In *City of Newark,* there was no allegation that the defendants made any reference to the quality of their design services for specified periods of time. *Id.* at 477.

In Count III the plaintiff contends that the defendant impliedly warranted that the roof installed on the warehouse purchased by the plaintiff was merchantable and reasonably fit and suitable to its general purpose and ordinary use as a roof, and that the plaintiff relied upon such implied warranty. Plaintiff also alleges that this implied warranty was breached in the same manner described in Count II and that plaintiff thereby suffered damage in the same manner alleged in Counts I, II, and IV.

*Statute of Limitations Defense*

The statute of limitations governing actions for breach of express and implied warranties is 6 *Del.C.* § 2–725, which requires that a cause of action for breach of any contract for sale be brought within four years of tender of delivery, except where "a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance." Where this exception applies, a cause of action does not accrue until "the breach is or should have been discovered."[4]

In the case *sub judice*, the plaintiff's cause of action is clearly barred unless the exception for warranties "explicitly extending the future performance" applies. The defendant having tendered delivery of the roof in September 1971, all other warranty actions lapsed in September 1975. The future performance exception, because it incorporates the time of discovery rule, if applicable, permits the plaintiff a cause of action for breach of warranty until four years after August 10, 1981, the date determined by the Court as the first time plaintiff had reason to know of the existence of a legal claim.

After a review of the case law interpreting section 2–725, albeit inconsistent, it is the opinion of the Court that the question of whether the plaintiff's breach of warranty claims fall within the exception for warranties "explicitly extending to future performance" is a mixed question of fact and law requiring an ultimate determination by the trier of fact. As to the issues of law presented, it is the opinion of the Court that a review of the law of Delaware and an examination of persuasive authorities of other jurisdictions precludes a determination by this Court, on a motion for summary judgment, that the warranties alleged in the case *sub judice* may not be characterized as applying to future performance. A genuine issue of fact is presented as to whether plaintiff's breach of warranty claims come within the exception of section 2–725(2) such that summary judgment would be inappropriate.

The Code distinction between present warranties, those which are representations as to the quality or condition of goods at the time of sale, and prospective warranties, those which refer to the future condition or performance of goods, is not an

---

4. § 2–725. State of limitations in contracts for sale.

 (1) An action of breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it.

 (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

 (3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

 (4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this subtitle becomes effective. (5A Del.C. 1953, § 2–725; 55 Del.Laws, c. 349.) See also, *Johnson v. Hockessin Tractor, Inc.,* Del.Supr., 420 A.2d 154 (1980) (holding that § 2–725 applies to breach of implied warranty actions as well as express warranty actions.)

innovation in the law of warranty. See, Williams, *The Statute of Limitations, Prospective Warranties, and Problems of Interpretation in Article Two of the UCC,* 52 Geo.Wash.L.Rev. 67 (1983) (herein, *The Statute of Limitations*). Prior to the adoption of the Code, the courts regularly distinguished between present and prospective warranties, but "displayed little consistency in distinguishing the two warranties." *Id.* at 73. The Code added little clarity. "Since the adoption of the Code, judicial decisions attempting to classify warranties as either present or prospective may be fairly characterized as inconsistent." *Id.,* at 68. Indeed, Professor Williams criticizes the attempt in the Code to create a uniform limitation period as masking the underlying conflict between the buyer's interest in warranty protection and the seller's interest in repose, without clarifying the problem of determining when a limitation period begins to run in specific situations. *Id.,* at 69. The courts have, accordingly, struck their own balance between "the seller's interest in repose and the buyer's interest in a remedy for defects that cannot be discovered until several years after the sale or delivery of defective goods." *Id.,* at 73.

In Delaware, that balance, although it has not been definitely determined, appears to have been struck in favor of the buyer through an extension of the time of discovery rule as applied in negligence actions. The Supreme Court's mitigation of the harshness of the time of occurrence rule in negligence actions is not necessarily support for the finding of a prospective warranty in a particular case in ·order to apply the time of discovery rule of section 2–725(2). Nevertheless, it indicates the preference of the Court to strike the balance between the seller's interest in repose and the buyer's interest in a remedy, for

defects that cannot be discovered until after sale or delivery of defective goods, in favor of the buyer.[5] The narrow construction given section 2–725(2) by the District Court in three recent cases does not dictate a contrary conclusion.

The District Court, "in effect, sitting as a state court" has had the "hazardous" duty of extrapolating from a single pre-Code case the position of the Delaware Supreme Court on an issue on which it has been noted there is in general little consistency. See, *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967), and *Costello v. Schmidlin,* 404 F.2d 87, 91 (3rd Cir.1968). The decisions of the District Court, while persuasive, are not authority for rejecting the application of section 2–725(2) in the instant case.

In *Raymond-Dravo-Langenfelder v. Microdot, Inc.,* 425 F.Supp. 614 (D.Del.1976), the District Court, in deciding whether pier form specifications constituted a warranty explicitly extending to future performance under section 2–725, held that the mere allegation by the plaintiff of its inability to discover any breach until the pier form was actually put into service was not controlling in the absence of contract language explicitly warranting future performance. *Id.,* at 618. The drafters of the UCC, the District Court stated, intended to reserve the benefits of an extended warranty to those who explicitly bargained for them. *Id.*

Again, in *Sellon v. General Motors Corp.,* 571 F.Supp. 1094 (D.Del.1983), the District Court held that a warranty that a fuel tank provided "impact security" did not come within the future performance exception of section 2–725 because the warranty did not contain an explicit reference to future performance. It was noted that "almost without exception the future per-

---

**5.** In *Becker v. Hamada, Inc.,* Del.Supr., 455 A.2d 353 (1982), a case also involving the defendant in the case *sub judice,* the Court stated that in regard to actions for breach of warranty and negligence "the warranties were breached, if at all, at the time of payment ... or at discovery of

defects shortly thereafter." *Id.,* at 356. The Court arguably left open the possibility that the warranty claim was subject to the discovery rule for determining the time of accrual under the applicable statute of limitation.

formance exception of 2–725(2) has been construed narrowly." *Id.*, at 1098. The Court also reiterated its position in *Raymond, supra,* that the plaintiff's lack of knowledge of the defect or the impossibility of discovering a defect at the time of sale does not create a warranty that extends to future performance. *Id.*, at 1099. In the absence of any direct, controlling authority, the District Court concluded that the Delaware Supreme Court would adopt the narrow interpretation of § 2–725(2) adopted by almost every court construing the statute. *Id.*

Most recently in *Ontario Hydro v. Zallea Systems, Inc.,* 569 F.Supp. 1261 (D.Del. 1983), the District Court again held that a warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised in order to be characterized within the exception of section 2–725(2). *Id.*, at 1266. The Court also had the occasion to consider whether a correction of defect clause was a repair or replacement warranty or a warranty of future performance. In the opinion of the District Court, if the provision is simply a repair or replacement warranty, then the time of discovery exception of section 2–725 did not apply. Only where the buyer is relying upon the warranty as a guaranty of future performance and not merely as a method by which a defective product can be remedied is there an effect on the plaintiff's ability to discover a breach.[6] Because the clause did not warrant how the product would perform in the future, the District Court concluded that the clause constituted a repair warranty and not a warranty for future performance. *Id.*[7]

A narrow construction of section 2–725 and what constituted a prospective warranty was undoubtedly justified in the cases mentioned above. This Court, however, is persuaded by the facts of the instant case and its interpretation of Delaware law that limiting the application of section 2–725 and the finding of a prospective warranty to only those situations where the parties put in writing that, in effect, section 2–725(2) would be applicable in the case of a breach is neither a necessary conclusion to be drawn from the District Court's analysis or in keeping with the law or policy of the State. See, Williams, *Statute of Limitations,* at 92–94.

The only Delaware decision to consider the issue of whether a warranty is present or prospective was *Gaffney v. Unit Crane and Shovel Corp.,* Del.Super., 117 A.2d 237 (1955), which was decided prior to the adoption of the Code. In *Sellon, supra,* the District Court concluded that the differences between the rule set forth in dicta in *Gaffney* and section 2–725 did not justify adopting a broad interpretation of that section; that is, one that "indicated that ability to discover a defect is relevant in determining whether a warranty extends to future performance." *Id.*, at 1099. In light of the use of the term "explicitly" found in the Code and absent in *Gaffney,* the District Court concluded that "the Delaware Supreme Court would adopt the narrow interpretation of section 2–725(2) adopted by almost every court construing the statute." *Id.* While it appears that most courts do construe the future performance exception narrowly, with special emphasis on the term "explicitly", that there are differences between the rule stated in *Gaffney* and the Code provision does not necessarily lead to the conclusion that *Gaffney* is not controlling. Williams, *Statute of Limitations, supra,* at 69–76. The

---

6. *Del.C.* § 2–725(2) states that the time of discovery rule applies when "a warranty explicitly extends to future performance of the goods *and* discovery of the breach must await the time of such performance."

7. In *Ontario,* the District Court also interpreted the law of Delaware for when tort actions accrue under 10 *Del.C.* § 8106 and concluded that

*Rudginski, supra,* was an "aberration" in extending the Delaware Supreme Court opinion relating to professional malpractice suits to a construction suit. This Court has noted that it does not consider *Rudginski* an aberration, but rather is of the opinion that *Rudginski* is consistent with the position of the Supreme Court.

Code attempted to establish a uniform statute of limitations, but had no effect on the various courts' interpretations of the distinction between present and prospective warranties. The Delaware Superior Court's statement in *Gaffney* referring to the distinction between present and prospective warranties was unaffected by the adoption of the Code.

It is granted that the ability to discover the defect is not sufficient to determine whether a warranty extends to future performance. In *Gaffney*, the Court reaffirmed the rule of *Mastellone v. Argo Oil Corp.*, Del.Supr., 82 A.2d 379 (1951) that "in the ordinary case ... ignorance of the facts is no obstacle to the operation of a statute of limitations". *Gaffney, supra,* at 239. The importance of *Gaffney* is that the Court stated, albeit in dicta,

> that there were authorities which hold that where the warranty refers to something to happen or to be done in the future, the statute of limitations does not begin to run until after the future time is reached.

*Gaffney, supra,* at 239.

Arguably, then, reference to something to happen or be done in the future may constitute a prospective warranty, and section 2–725(2) need not be read as requiring an express reference to a warranty of future performance so long as there is a basis for interpreting the contract as including a warranty as to the future condition or performance of the goods: that is, that the parties in fact bargained for such a guaranty.

 It is not necessary, therefore, that section 2–725(2) be read so narrowly as to require the parties to include in their agreement an explicit reference to the existence of a prospective warranty so long as the agreement explicitly refers to something to happen or be done in the future. As observed by the District Court in *Sellon* and *Raymond-Dravo-Langenfelder* "the question of whether a warranty explicitly extends to future performance is essentially a matter of contract construction." *Sellon, supra,* at 1098. In construing the terms of a contract, the courts are not bound by the literal language of the agreement, but can engage in a process of interpretation by which the respective rights and duties of the parties are determined. In the case *sub judice,* viewing the facts in a light most favorable to the plaintiff, as the court must at this stage of the proceedings, the record reveals that, under the bond issued by the defendant, explicit references were made to something to be done in the future in regard to plaintiff's roof. The defendant assured the plaintiff that under the repair and inspection provisions of the bond that the cause of defects in the roof would be determined. In making repairs, the defendant told the plaintiff that the problems with the roof were solved and that they would stand behind the repairs.

The District Court's analysis of warranties in conjunction with remedies is, likewise, not support for the conclusion that every warranty involving repair and replacement provisions is excluded from the section 2–725(2) exception applicable to warranties for future performance. The cases are split, with some courts finding either that the remedy distinction is irrelevant or considering reference to a specific number of years as proof that the seller is explicitly warranting the future performance of the product or goods for that period of time. Williams, *Statute of Limitations, supra,* at 83–87. The record in this case indicates that the bond for repair was not simply a repair warranty. The plaintiff was not relying upon the warranty merely as a method by which a defective product can be remedied, but rather as a guarantee of future performance. *Ontario, supra,* at 1266. The allegations of the plaintiff, undisputed by the defendant, are that after each repair the defendant guaranteed that the repairs would absolutely solve the problems and that the cause of the problems were due to ordinary wear and tear rather than a defect in the materials. From these facts it may reasonably be inferred that the defendant was impliedly or expressly pro-

viding some form of guarantee concerning the future condition of the roof. *Id.*

In light of the forgoing analysis, it is the opinion of the Court that a genuine issue of fact is presented in this case as to whether the alleged representations made by the defendant to the plaintiff, under the terms of the bond, were warranties extending to future performance within the meaning of 6 *Del.C.* § 2–725(2). The Court has identified two bases for its conclusion. First, the preference articulated in the law of Delaware in negligence actions to strike the balance between the seller's interest in repose and the buyer's interest in a remedy in favor of the buyer suggests that § 2–725(2) applies in this case. Here the plaintiff relied upon the defendant to inspect and repair defects in the roof caused by ordinary wear and tear and was, thereby, prevented from discovering the alleged inherent defects in the roof until the plaintiff performed his obligations under the bond. While § 2–725(2) states that an "aggrieved party's lack of knowledge of the breach" is not a factor in determining whether a cause of action for breach of warranty accrues, part of the test for determining when a breach occurs is that "discovery of the breach must await the time of [future] performance." 6 *Del.C.* § 2–725(2). The same policy considerations motivating the extension of the time of discovery rule in negligence actions is equally applicable under § 2–725(2) in circumstances which make the defect in goods inherently unknowable and about which the plaintiff is blamelessly ignorant. Second, the facts of this case support a conclusion that the warranties of future performance alleged were in fact bargained for. In order for a warranty to "explicitly" extend to future performance under § 2–725(2) a future guaranty must have been part of the basis of the bargain. *Ontario Hydro, supra,* at 1266. Under the terms of the bond, the defendant assumed the duty to inform the plaintiff as to the cause of and responsibility for defects in the roof. In this matter, the defendant warranted to the plaintiff,

until otherwise notified, that the roof was free from defects. This agreement is sufficient under *Gaffney, supra,* to represent a warranty which "refers to something to happen or to be done in the future" and to, thus, qualify as a prospective warranty to which the time of discovery rule of § 2–725(2) applies. *Id.* at 239. The parties need not have "explicitly" agreed that, in the case of a breach, § 2–725(2) would apply. The Court is, thus, precluded from ruling, as a matter of law, that the alleged warranties involved here do not fall within the exception of 6 *Del.C.* § 2–725(2).

The defendant's motion for summary judgment on Counts II and III on the ground that these claims are barred by the statute of limitations, is, accordingly, denied.

The remaining issues to be addressed in this case are as follows:

(1) Whether a material misrepresentation of fact was made by the defendant upon which the plaintiff relied that is sufficient to state a claim of common-law fraud.

(2) Whether defendant's alleged statements were made "in connection with the sale or advertisement" of goods as required under 6 *Del.C.* 2513.

(3) Whether a question of fact is presented as to whether express or implied warranties were made.

The Court will then address the defendant's motion to strike references in plaintiff's complaint to litigation pending elsewhere against the defendant.

COMMON–LAW FRAUD

In *In Re Brandywine Volkswagen, Ltd.,* Del.Super., 306 A.2d 24 (1973), the Court stated the test for establishing a cause of action for fraud under the common law:

> To support a fraud action at law there must be the following: (1) material misrepresentation, (2) which was false, (3) known by the maker to be false or made in reckless indifference to the truth, (4) made with intent to induce other party to act, and (5) a misleading of the other

party in reliance upon which he acted and was damaged.

*Id.*, at 27, footnote 5, citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510 (1931).

The plaintiff alleges that the defendant made misrepresentations in connection with the advertisement and promotion of its roofing system and in reliance thereon Park and the original roofing contractor purchased and installed, in 1971, the defendant's roofing system. Plaintiff also alleges that the defendant made misrepresentations in connection with the repair of the roof in 1972, 1974, 1978 and twice in 1980. The defendant argues that the only representations made to the plaintiff were in regard to repairs made after the plaintiff purchased the warehouse in 1976. The defendant further states that as to these statements it cannot be inferred from the facts that the plaintiff took any action in reliance or was in any way damaged, and that, therefore, the elements of an action for common law fraud have not been established.

The parties have focused on the final element (5) of reliance and damages of the test for fraud spelled out in *Nye, supra.* It appears to the Court that the plaintiff cannot claim reliance on statements made to the former owners of the warehouse of which they had no knowledge. The question becomes then whether, in regard to the statements made to the plaintiff after the purchase of the warehouse, a genuine issue of fact is presented as to whether these representations were (1) material, (2) false, (3) known by the defendant to be false or made in reckless indifference to the truth, (4) made by the defendant with the intent to induce the plaintiff to act, and (5) acted upon by the plaintiff in reliance and resulting in damage to the plaintiff.

Plaintiff has made the following allegations: that the defendant represented that repairs to the roof, made under the terms of the bond, were for problems caused by ordinary wear and tear; that the defendant knew or had reason to know that these repairs were not for leaks caused by ordinary wear and tear; that the defendant made these statements regarding the cause of the roof leaks in order to prevent the plaintiff from determining that the roof was in fact inherently defective; and, that, as a result, the plaintiff did not take steps to determine the cause of the leaks and thereby suffered damage to the roof structure and the contents of the warehouse caused by continuous leak problems in the roof.

■ Defendant argues that the plaintiff did not act in reliance upon the statements made by its representatives regarding the quality of the repairs made under the bond and was not damaged as a result in any way. Contrary to the conclusion of the defendant, the Court is of the opinion that a material issue of fact is presented as to whether the plaintiff acted in reliance upon defendant's alleged representations regarding the cause of the roof leaks and as to whether the plaintiff was injured as a result. As noted by this Court in its discussion of the time of discovery rule and the accrual of plaintiff's causes of action for fraud and negligence, the defendant's contractual obligation under the bond required that it inform the plaintiff as to the cause and responsibility for repairs. Fraud may occur through either "deliberate concealment of material facts, or by silence in the fact of a duty to speak." *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069, 1074 (1983). At this stage of the proceeding, it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the common law of fraud in this case. *Ebersole, supra.*

The defendant's motion for summary judgment on Count I on the ground that plaintiff did not act in reliance upon and was not damaged by any material or false representation made by the defendant to the plaintiff is, accordingly, denied.

STATUTORY FRAUD

Having denied the defendant's motion for summary judgment on the common law

fraud claim, it seems axiomatic that a motion for summary judgment on a statutory fraud claim shall also be denied, in that a cause of action for statutory fraud is generally made out when an action for common law fraud has been granted. In *Stephenson, supra,* the Supreme Court observed that the Consumer Fraud Act, 6 *Del.C.,* § 2511 et seq., although it parallels common law fraud, does not require proof of (1) intent to make a deceptive or untrue statement, (2) actual reliance by the plaintiff, or (3) intent to induce reliance. *Id.,* at 1074. Establishing a claim under the Consumer Fraud Act is almost a forgone conclusion once a claim for common law fraud is recognized.

The defendant, however, has raised a defense to plaintiff's claim under the Consumer Fraud Act: whether defendant's alleged unlawful practices were made "in connection with the sale or advertisement of any merchandise" as required by § 2513(a). Defendant argues that the Consumer Fraud Act has no application to the plaintiff's claims where the plaintiff did not in fact participate in the sale of the roof or rely on any advertisements of the roof. The Court has isolated the scope of plaintiff's alleged reliance to those statements made by the defendant in regard to repairs made to the roof after plaintiff purchased the warehouse. The Court, however, is not persuaded that it is necessary to interpret the phrase "in connection with" as requiring that the plaintiff have been involved in the sale of the roof or have relied on defendant's advertisements.

■ "In connection with" is a phrase suggesting a broad interpretation of how involved with the distribution of merchandise a consumer has to be in order to bring a cause of action under the statute. The emphasis of the Consumer Fraud Act is on the unlawful practices of merchants and not on the specific relationship of the consumer to the alleged unlawful practice. In *Young, supra,* the Supreme Court quoted the stated purpose of the Consumer Fraud Act: "... to protect consumers and legitimate business enterprises from unfair and deceptive merchandising practices in the conduct of any trade or commerce." *Id.,* at 860 quoting 6 *Del.C.* § 2512. In *Brandywine Volkswagen, Ltd. v. State,* Del.Supr., 312 A.2d 632, 634 (1973), the Supreme Court observed that "an obvious objective of the law is to raise the standards which the public has a right to expect from all business enterprises...." The intent of the legislature was that the Consumer Fraud Act "be liberally construed and applied to promote its underlying purposes and policies." 6 *Del.C.* § 2512. In light of this clearly articulated intent, the Court is not able to conclude that defendant's alleged unlawful practices were not made "in connection with the sale or advertisement of any merchandise." 6 *Del.C.* § 2513.

The defendant's motion for summary judgment on Count I on the ground that the plaintiff's claim is outside the application of 6 *Del.C.* § 2513 is, accordingly, denied.

EXPRESS WARRANTIES

The defendant argues that no representations were made to the plaintiff upon which it relied in purchasing the warehouse. The defendant also contends that there is no evidence in the record upon which to conclude that any such representations made by the defendant formed the "basis of the bargain" as required by 6 *Del.C.* § 2-313(1)(a).[8]

---

**8.** § 2-313. Express warranties by affirmation, promise, description, sample.

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express

The plaintiff denies defendant's arguments without offering reasons in support of its claim of breach of express warranties. Despite the plaintiff's failure to support the assertion of a breach of express warranty, the Court is of the opinion that the record reveals a disputed question of fact as to whether express warranties were made which precludes the granting of a motion for summary judgment for the defendant on this issue.

■ In purchasing the warehouse from W.I. Park, the plaintiff, through an assignment clause, succeeded to all the rights and duties that existed under the contract for a repair bond between the defendant and Park. Thereafter, any affirmations of fact or promise made by the defendant to the plaintiff relating to the roof may have become a part of the basis of the bargain by way of an oral modification of that contract. See, UCC § 2–313, Comment 7. Whether or not an affirmation of fact or promise was part of the basis of the bargain of a modified contract is a question of fact properly left for the jury. The burden is on the defendant to prove the absence of reliance in order to discount the contention that express warranties were "a basis for the bargain." Proof of reliance, however, is not necessary to create an express warranty.

■ Viewing the facts in a light most favorable to the plaintiff, the record reveals evidence of statements made to the plaintiff by the defendant from which it may reasonably be inferred that the defendant created express warranties. The defendant gave assurances and made statements to the plaintiff regarding the condition of the roof and the quality of the repairs. A question of fact is presented as to whether these statements amounted to "affirmations of fact or promise" so as to create an express warranty under § 2–313.

The defendant's motion for summary judgment with respect to plaintiff's claim of breach of express warranty in Count II is, therefore, denied.

## IMPLIED WARRANTIES

■ In its reply brief the defendant makes an additional argument in support of its contention that an implied warranty cannot be inferred from its performance under the repair bond: namely, that 6 *Del.C.* § 2–318 limits the recovery for breach of implied warranties to those satisfying the common law requirement of privity of contract.[9] The Court, however, reads this statute and the accompanying comments as taking a neutral position on the issue of vertical privity (whether "the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain"). U.C.C. § 2–318, Comment 3.

No law or case cited to the Court by the defendant requires a showing of privity of contract in a case such as the one presented here involving an action for breach of contract, rather than an action for strict liability in tort, and claiming damage solely to property, and not personal injury. *Dillion v. General Motors Corporation,* Del.Super., 315 A.2d 732 (1974), which abolished the necessity of

---

warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. (5A Del.C. 1953, § 2–313; 55 Del.Laws, c. 349)

**9.** The defendant concedes that § 2–318 is no longer intended to be limited to actions by "nat-

ural persons." See Delaware Study Comment to 6 *Del.C.* § 2–318. The statute is set out in full:

§ 2–318. Third party beneficiaries of warranties express or implied.

A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section. (5A Del.C. 1953, § 2–318; 55 Del.Laws, c. 349)

privity where the product sold was inherently dangerous, involved an action for personal injuries as well as property damage. While, as noted by the defendant, a roof is not ordinarily characterized as "inherently dangerous," this case involves an action solely for economic injury in regard to the sale of a roof alleged to be inherently defective. The rule applied in *Dillion*, requiring that a product must be "inherently dangerous" before the privity requirement may be abandoned, was addressed principally, if not solely, to the personal injury claim. *Dillion, supra*, at 735–736. By analogy, *Dillion* is support for the proposition that just as the privity requirement has been abandoned in personal injury actions where the item is inherently dangerous, so should the privity requirement be abandoned in actions for economic injury where the good is inherently defective. See, Comment, *Applying the No-Privity Exception to Express Warranties—Another Step Toward Extending Strict Liability to Recover Solely Economic Losses*, 23 S.Tex. L.J. 243–71 (1983).[10]

The Court is of the opinion that the concern of the authors of the Delaware Study Comment to 6 *Del.C.* § 2–318 that ultimate consumers of defective goods not be left without recovery against "remote manufacturers, wholesalers and other vendors" justifies such a conclusion. 6 *Del.C.* § 2–318 at 59.

The defendant's motion for summary judgment with respect to plaintiff's claim of breach of implied warranties in Count III is, therefore, denied.

## MOTION TO STRIKE

The defendant has filed a motion to strike references in paragraphs 5, 12 and 13 of plaintiff's amended complaint on the grounds that these references are not admissible to prove knowledge of the alleged defect in the roof and that the defendant was under no legal duty to make the disclo-

sures of pending litigation against the defendant.

Paragraphs 5 and 13 include references to litigation pending against the defendant in other jurisdictions. In paragraph 12 the plaintiff refers to statements made by Cullen, the roofing contractor first employed to make repairs on the roof on plaintiff's warehouse, that he had "tremendous problems" with defendant's roofs which he had installed on plaintiff's warehouse and on other buildings and that "the problems had not been 100% corrected.

■■ On a motion to strike under Rule 12(f) "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Super.Ct.Civ.R. 12(f). Motions to strike are not favored and are granted sparingly, and then only if clearly warranted, with doubt being resolved in favor of the pleading. *Phillips v. Delaware Power and Light*, Del.Super., 194 A.2d 690 (1963), 35A C.J.S. *Federal Civil Procedure* § 415.

A motion to strike will be granted "where a plea upon its face appears to be frivolous, dilatory, vexatious or nugatory." 1 Wooley on Delaware Practice § 433 (1906). The Court must consider whether the pleaded matter has some relevancy to the cause of action, is directly in reply to the matter which is pleaded and is offered in support of a direct issue. *Id.* Thus, "a plea which does not set out any issuable fact ... will be ordered stricken out." *Id.*

■■ A motion to strike differs from a motion for summary judgment in that a "motion to strike will reach formal defects only" while on a motion for summary judgment the sufficiency of the pleadings, in matters of form as well as substance, will be tried. *Id.* The defendant's argument relating to whether or not they were under

---

**10.** A distinction between economic injury and property damage is discussed in this comment. For the purposes of this motion the distinction is not an obstacle.

a legal duty to disclose the information contained in plaintiff's complaint is, therefore, inappropriate and inapposite in consideration of a motion to strike. The only issues before the Court now are whether these challenged averments are relevant to an issue in the case and whether, in this instance, they should be stricken as unduly prejudicial.

■ The defendant's knowledge of pending litigation and of the statements of Cullen concerning allegations of inherent defects in defendant's roofing systems is probative of whether the defendant knew or had reason to know that the problems with plaintiff's roof were due to inherent defects rather than ordinary wear and tear. This pleaded matter thus is relevant to the issue of knowledge involved in varying degrees in plaintiff's actions for fraud, negligence and breach of warranties. The averments are not frivolous, dilatory, vexations or nugatory, but speak to a direct issue in the case and are stated in a concise and non-repetitive manner. These statements are directed only to the issue of defendant's knowledge of the allegedly defective condition of plaintiff's roof and do not address whether the roof on plaintiff's warehouse was in fact defective or whether plaintiff's roof is the same type of roof involved in actions being litigated elsewhere. The prejudice to defendant in allowing these references to remain in plaintiff's complaint is not obvious to the Court, and in the judgment of the Court should not be stricken. Objectionable matter will be stricken only if it is clearly shown to be unduly prejudicial. Any question of the inadmissibility of those references as hearsay may be addressed at trial.

The defendant having failed to persuade the Court of the unduly prejudicial nature of plaintiff's averments in paragraphs 5, 12 and 13, defendant's motion to strike is denied.

IT IS SO ORDERED.